ORIGINAL

1　David H. Waters, CASB# 078512
　　dwaters@burnhambrown.com
2　Jack W. Schwartz, Jr., CASB# 124506
　　jschwartz@burnhambrown.com E-filing
3　BURNHAM BROWN
　　A Professional Law Corporation
4　P.O. Box 119
　　Oakland, California 94604
5　----
　　1901 Harrison Street, 14th Floor
6　Oakland, California 94612　ADR
　　Telephone:　(510) 444-6800
7　Facsimile:　(510) 835-6666

8　Attorneys for the Federal Deposit Insurance Corporation
　　as Receiver for IndyMac Federal Bank, FSB

9

FILED *Paid*

2011 MAY 13  A 9:44  *NP*

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
N.D. CA-SAN JOSE

10　　　　　　UNITED STATES DISTRICT COURT

11　　　　　NORTHERN DISTRICT OF CALIFORNIA

HRL

12　EDEN GARDEN LLC, a California limited
　　liability company; ALI K. AMIDY, an
13　individual; GUITI NAHAVANDI AMIDY,
　　an individual; CENTRA NET
14　INVESTMENT LLC, a California limited
　　liability company,
15
　　　　　　　　Plaintiffs,
16
　　v.
17
　　INDYMAC VENTURE, LLC, a Limited
18　Liability Company, FEDERAL DEPOSIT
　　INSURANCE CORPORATION, as
19　Conservator of IndyMac Federal Bank, FSB,
　　and DOES 1-10,
20
　　　　　　　　Defendants.
21

CV 11-02356

State Court Case No. 1-11-CV-192197

**NOTICE OF REMOVAL OF CIVIL
ACTION BY FEDERAL DEPOSIT
INSURANCE CORPORATION AS
RECEIVER FOR INDYMAC
FEDERAL BANK, FSB**

22　　　　TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT

23　FOR THE NORTHERN DISTRICT OF CALIFORNIA:

24　　　　Pursuant to 12 U.S.C. §1819(b)(2)(B) and 28 U.S.C. §1441, the Federal Deposit

25　Insurance Corporation, as Receiver for INDYMAC FEDERAL BANK, FSB (hereafter "*FDIC*

26　*- Receiver*"), erroneously sued herein as FEDERAL DEPOSIT INSURANCE

27　CORPORATION AS CONSERVATOR OF INDYMAC FEDERAL BANK, FSB, hereby

28

1

FAXED

1  removes the above-entitled lawsuit from the Superior Court of California in and for the County

2  of Santa Clara, in which the action is now pending, to the United States District Court of

3  California. As grounds for the removal of this case, the FDIC – Receiver states as follows:

### PLEADINGS AND PROCEEDINGS TO DATE

5      1.     On or about January 19, 2011, Plaintiffs EDEN GARDEN LLC, a California

6  limited liability company; ALI K. AMIDY, an individual; GUITI NAHAVANDI AMIDY, an

7  individual; CENTRA NET INVESTMENT LLC, a California limited liability company, filed a

8  Complaint in the Superior Court of the State of California, County of Santa Clara, Case

9  No. 1-11-CV-192197 against named defendants INDY MAC VENTURE, LLC, a Limited

10  Liability Company, FEDERAL DEPOSIT INSURANCE CORPORATION, as Conservator of

11  IndyMac Federal Bank, FSB, and DOES 1-10 ("*State Court Complaint*"), asserting four (4)

12  separate causes of action arising from a loan secured by a deed of trust on identified real

13  property. A true and correct copy of the State Court Complaint is attached hereto as and

14  included in Exhibit "A".

15      2.     On March 19, 2009, IndyMac Federal Bank, FSB was closed by the Office of

16  Thrift Supervision ("*OTS*"). The Federal Deposit Insurance Corporation ("*FDIC*") accepted its

17  appointment from the OTS to serve as Receiver for IndyMac Federal Bank, FSB. A true and

18  correct copy of the OTS' March 19, 2009 order appointing the FDIC as Receiver for IndyMac

19  Bank, FSB is attached hereto as Exhibit "B".

20      3.     As Receiver for IndyMac Federal Bank, FSB, the FDIC – Receiver has succeeded

21  to all rights, title, powers and privileges of IndyMac Federal Bank, FSB, pursuant to *12 U.S.C.*

22  *§1821(c)(3)(A)*. See also, *12 U.S.C. 1821(d)(2)(A)(i)* (providing that the FDIC as receiver of a

23  failed institution succeeds to all of its rights, title, and interests to books, records and assets of

24  the institution). Accordingly, the FDIC-Receiver stands in the shoes of IndyMac Federal Bank,

25  FSB with respect to all matters.

26  ///

27  ///

28  ///

NOTICE OF REMOVAL OF CIVIL ACTION BY FEDERAL DEPOSIT INSURANCE     No. 1-11-CV-192197
CORPORATION AS RECEIVER FOR INDYMAC FEDERAL BANK, FSB

**BASIS FOR REMOVAL**

4.    This case is removable pursuant to *28 U.S.C. § 1441(b)* which provides in relevant part:

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.

5.    Any civil suit in which the FDIC, in any capacity, is a party is "deemed to arise under the laws of the United States. *12 U.S.C. §1819(b)(2)(A)*; See also, *Bullion Service, Inc. v. Valley State Bank*, 50 F.3d 705, 707 (9th Cir. 1995). When the FDIC – Receiver is a party, the entire action is deemed to arise under the laws of the United States. See, *Buchner v. FDIC*, 981 F.2d 816, 819 (5th Cir. 1993).

6.    On April 18, 2011, FDIC – Receiver was served with the State Court Action.

7.    The instant Notice of Removal is being brought within the 30-day period of *28 U.S.C. § 1446(b)* from the date the FDIC - Receiver was served as a party in the State Court action.

8.    Because the FDIC is now a party to the State Court action, the entire State Court action must be removed to the United States District Court for the Northern District of California.

9.    Pursuant to *28 U.S.C. §1446(d)*, the FDIC - Receiver will promptly serve notice of the filing of this removal to all parties of record in the State Court action and to the Clerk of the Superior Court of California in and for the County of Santa Clara.

10.    Venue properly lies with this Court pursuant to *28 U.S.C. §§1441(a)* and *1446(a)* as this action is presently pending in the Superior Court of California in and for the County of Santa Clara.

11.    A copy of all process, pleadings and orders served by or upon the FDIC – Receiver is attached hereto to this Notice of Removal as required by 28 U.S.C. §1446(a) as Exhibit "A".

NOTICE OF REMOVAL OF CIVIL ACTION BY FEDERAL DEPOSIT INSURANCE          No. 1-11-CV-192197
CORPORATION AS RECEIVER FOR INDYMAC FEDERAL BANK, FSB

**INTRADISTRICT ASSIGNMENT**

12.     Pursuant to Civil L. R. 3-2(e) the basis for assignment to the San Jose Division of the United States District Court for the Northern District of California is as follows: the state action sought to be removed and as set forth in Plaintiffs' State Court Action Complaint was commenced in the Superior Court of California in and for the County of Santa Clara, the real property pertaining to the State Court Action and/or events alleged to have occurred in the State Action Complaint arose in the County of Santa Clara, State of California.

WHEREFORE, the FDIC – Receiver prays that the above-entitled action, currently pending in the Superior Court of California, be removed to the United States District Court for the Northern District of California, San Jose Division, and that this action proceed in this Court as a properly removed action.

Respectfully submitted

DATED: May 1, 2011

BURNHAM BROWN

By: _____
DAVID H. WATERS
JACK W. SCHWARTZ JR.
Attorneys for Federal Deposit
Insurance Corporation as Receiver
for INDYMAC FEDERAL BANK,
FSB

1076580

4

NOTICE OF REMOVAL OF CIVIL ACTION BY FEDERAL DEPOSIT INSURANCE     No. 1-11-CV-192197
CORPORATION AS RECEIVER FOR INDYMAC FEDERAL BANK, FSB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT "A"**

NOTICE OF REMOVAL OF CIVIL ACTION BY FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR INDYMAC FEDERAL BANK, FSB
No. 1-11-CV-192197

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY |
|---|---|
| | (SOLO PARA USO DE LA CORTE) |

**TICE TO DEFENDANT:**
*VISO AL DEMANDADO):*
NDY MAC VENTURE, LLC, a Limited Liability Company
EDERAL DEPOSIT INSURANCE CORPORATION, as
Conservator of Indy Mac Federal Bank, Does 1-10

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
EDEN GARDEN LLC, Ali K. Amidy, Guiti Nahavandi Amidy and
Centra Net Investment LLC.

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER: (Número del Caso): |
|---|---|
| (El nombre y dirección de la corte es): | 1 1 1 C V 1 9 9 2 1 2 |

Superior Court of California, County of Santa Clara
191 North First Street
San Jose, CA 95113

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
W. Kenneth Howard                           408-375-1904
116 E. Campbell Ave. #7
Campbell, CA 95008

| DATE: | | Clerk, by | | , Deputy |
|---|---|---|---|---|
| (Fecha) JAN 1 9 2011 | | (Secretario) | | (Adjunto) |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of (specify):

3. [ ] on behalf of (specify):
   under: [ ] CCP 416.10 (corporation)       [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
          [ ] other (specify):
4. [ ] by personal delivery on (date):

| [SEAL] | **PERSONAL SERVICE** |
|---|---|
| | Service for _____ |
| | APR 1 8 2011 |
| | Name *W. Wan Luis* |
| | Time *12:57* |

Page 1 of 1

| Form Adopted for Mandatory Use | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 |
|---|---|---|
| Judicial Council of California | | www.courtinfo.ca.gov |
| SUM-100 [Rev. July 1, 2009] | ESSENTIAL FORMS™ | |

1    W. KENNETH HOWARD (SBN 129061)
     Attorney at Law
2    116 East Campbell Ave. #7
     Campbell, CA 95008
3    408-379-1904
     Fax 408-379-1902

4

5

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                IN AND FOR THE COUNTY OF SANTA CLARA

10

11   EDEN GARDEN LLC, a California limited      CASE NO. 111CV192173
     liability company; ALI K. AMIDY, an
12   individual; GUITI NAHAVANDI AMIDY,         COMPLAINT FOR :
     an individual; CENTRA NET
13   INVESTMENT LLC, a California limited
     liability company;                           1)  Breach of Settlement Agreement and
14                                                     Order Vacating Trustee's Sale
                Plaintiffs,                        2)  Promissory Fraud;
15                                                 3)  Negligent Misrepresentation;
            vs.                                    4)  Fraud in the Inducement – Loan
16                                                     Agreement, Note, Trust Deed, Amidy
     INDY MAC VENTURE, LLC, a Limited                  Guaranty, and Centra Net Guaranty
17   Liability Company, FEDERAL DEPOSIT
     INSURANCE CORPORATION, as
18   Conservator of IndyMac Federal Bank,
     FSB, and Does 1 through 10
19
                Defendants
20

21

22        Plaintiffs  EDEN GARDEN LLC, a California limited liability company ("Eden

23   Garden"), ALI K. AMIDY, an individual ("Ali"), GUITI NAHAVANDI AMIDY, an individual

24   ("Guiti"), and CENTRA NET INVESTMENT LLC, a California limited liability company

25   ("Centra Net") (collectively, "Plaintiffs") complain and allege against INDY MAC VENTURES,

26   LLC, FEDERAL DEPOSIT INSURANCE CORPORATION, and Does 1 through 10 as follows:

27

28

     COMPLAINT

## THE PARTIES

1. Plaintiff Eden Garden is a limited liability company formed and existing under the laws of the State of California, and at all times relevant herein was doing business in the State of California, County of Santa Clara. Eden Garden was formed for the purpose of developing and selling an 18-unit condominium project in San Jose, California, to be known as "Eden Garden Townhomes" ("the Project") the legal description of which is attached hereto as Exhibit A..

2. Plaintiffs Ali and Guiti are individuals, and at all times relevant herein were residing and/or doing business in the State of California, County of Santa Clara. At all times relevant herein, Plaintiff Ali was the Managing Member of Eden Garden.

3. Plaintiff Centra Net is a limited liability company formed and existing under the laws of the State of California, and at all times relevant herein was doing business in the State of California, County of Santa Clara. At all times relevant herein, Plaintiff Ali was the Managing Member of Centra Net.

4. Plaintiffs are informed and believe, and thereon allege, that Defendant, FEDERAL DEPOSIT INSURANCE CORPORATION (hereafter " FDIC") is, and at all times relevant herein was, a corporation organized and existing pursuant to an Act of Congress of the United States known as the Federal Deposit Insurance Act, 12 U.S.C. § 1811, et sea., with its principal place of business located in Washington, D.C.

5. Plaintiffs are informed and believe and thereon allege, that Defendant INDYMAC VENTURE, LLC, (hereafter "INDYMAC") is a limited liability company and the successor in interest and assignee of certain assets of INDY MAC BANK, F.S.B, including the Loan Agreements, promissory notes, deed of trust and associated claims and cross-claims involved in this litigation.

6. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe, and thereon allege, that each of the fictitiously named Defendants is in some way involved in and/or responsible for the events, transactions, or

COMPLAINT

1    occurrences alleged in this Complaint, as well as the damages caused to Plaintiffs as set forth

2    below.

3          7.        Plaintiffs are informed and believe, and thereon allege, that at all times relevant

4    herein Plaintiffs, and each of them, were acting as agents, servants, employees, joint venturers, or

5    representatives of each other, and were acting within the full course and scope of their agency,

6    employment and joint venture with the full knowledge, consent, permission, acquiescence and

7    ratification, either express or implied, of each of the other Defendants in performing the acts

8    alleged in this Complaint.

9                            **GENERAL ALLEGATIONS**

10         8.        On September 30, 2005, Plaintiff Eden Garden and INDY MAC BANK, F.S.B

11   entered into a Building Loan Agreement ("the Loan Agreement"), wherein INDY MAC BANK,

12   F.S.B agreed to make a loan to Eden Garden, in the amount of $5,904,000.00, for the

13   construction of the Project. The total Project cost was expected to be in the amount of

14   $7,667,490.00, with Plaintiffs contributing $1,763,490.00 in cash and equity.

15         9.        Section 3.00 of the Loan Agreement provides as follows:

16                       "Disbursements, Set Aside Letters and Letters of Credit. Subject to the

17                       terms, conditions and procedures set forth in this Agreement and in the

18                       'Disbursement Schedule' attached as Exhibit 'B', the Lender shall make

19                       Disbursements to or for the account of the Borrower...from time to time

20                       from the date of this Agreement to the Banking Day immediately preceding

21                       the Maturity Date.

22                  Section (b) of Exhibit "B" to the Loan Agreement provides as follows:

23                       "Method of Disbursement. Subject to fulfillment of all applicable

24                       conditions and the terms and procedures set forth in the Agreement and this

25                       Disbursement Schedule: (i) each Disbursement shall be made on the basis

26                       of a Disbursement Request submitted (in duplicate) by the Borrower to the

27                       Lender,..."

28                  Section (f) of Exhibit "B" to the Loan Agreement provides as follows:

COMPLAINT

1           "Deposit of Borrower's Funds.  Prior to the first Disbursement..., the

2           Borrower shall deposit with the Lender Borrower's Funds in an amount

3           equal to all 'Additional Costs To Be Paid By Borrower' set forth in the

4           original Project Budget, and the Borrower may from time to time deposit

5           additional Borrower's Funds with the Lender as the Borrower deems

6           appropriate to cover any increase in Project Costs...."

7        Section (g) of Exhibit "B" to the Loan Agreement provides as follows:

8           "Disbursement Controls.  Notwithstanding anything in this Exhibit 'B' to

9           the contrary, the disbursement controls shall be as follows:...Frequency of

10          Disbursement...1-2 a month."

11       Section 4.01 of the Loan Agreement provides as follows:

12          "Construction of Improvements.  The Borrower shall cause construction of

13          the improvements to commence immediately after the date the Trust Deed

14          is recorded, and shall be diligently and continuously prosecuted to

15          completion....(d) construction of the improvements shall in any event be

16          completed on or before the Maturity Date...."

17       Section 4.05 of the Loan Agreement provides as follows:

18          "Lien Priority and Restrictions on Sale or Encumbrance; Partial

19          Releases...(i) the Borrower may sell Units (together with undivided

20          interests in common areas to be transferred to purchasers of such Units) in

21          the ordinary course of business for an amount not less than the 'Minimum

22          Sales Price' set forth in Exhibit 'E'...(iii) the Borrower may, in the

23          ordinary course of business, receive, hold and dispose of any excess

24          proceeds resulting from the sale of any Unit after payment of the applicable

25          'Release Price';...The amount of any 'Release Price' received by the

26          Lender shall be applied to the principal of the Note,..."

27       Exhibit "E" to the Loan Agreement set forth the Minimum Sales Price and the

28 Release Price of each Unit.

COMPLAINT

Section 4.11 of the Loan Agreement provides as follows:

"Construction Information and Reporting Requirements. The Borrower shall cause to be delivered to the Lender, in forma and detail satisfactory to the Lender:

(a)    promptly after discovery by the Borrower, notice of (i) any fact or circumstance that may or will cause the Project Costs associated with any Line Item to exceed or be less than the corresponding amount set forth in the Project Budget or the Line Item Budget by more than 5%, or that may or will cause any Project Costs for any matters not covered by specific Line Items to exceed, in the aggregate, $50,000;...(iii) any actual or anticipated material delays in construction;...(v) the occurrence or allegation of any termination, material breach or default, or failure of any material condition or other requirement under the...Construction Contract,..(x) any event which has or may have a material adverse impact on the Collateral or the Project,..."

Section J. of Exhibit "C" to the Loan Agreement provides as follows:

"Sales Start Date: The Borrower shall cause the first Unit to be available for sale no later than May 1, 2006."

Section L. of Exhibit "C" to the Loan Agreement provides as follows:

"Unit Closings. The Borrower shall cause the first Unit to close no later than August 1, 2006 and shall cause not less than three (3) Units to be closed during each month, commencing after the first Unit closing or August 1, 2006, whichever is sooner."

10.    Pursuant to Section (f) of Exhibit "B" to the Loan Agreement, Plaintiff Eden Garden deposited with INDY MAC BANK, F.S.B funds for the "Additional Costs To Be Paid By Borrower" as required by the Loan Agreement, in an amount in excess of the jurisdictional minimum of this Court.

COMPLAINT

1   11. Pursuant to the Loan Agreement as set forth above, it was understood and agreed

2 between INDY MAC BANK, F.S.B and Plaintiffs that funds under the loan were to be released

3 to Eden Garden by way of Disbursements as construction on the Project progressed, from the

4 beginning of the Project until its completion. It was further understood and agreed between

5 INDY MAC BANK, F.S.B and Eden Garden, as reflected in the Loan Agreement (including

6 without limitation Sections 4.05, Exhibit "E" to the Loan Agreement, and Sections J. and L. of

7 Exhibit "C" to the Loan Agreement as set forth above), that the construction loan was to be repaid

8 out of the proceeds of sale of the condominiums upon completion of the Project.

9   12. On or about September 30, 2005, and in connection with the Loan Agreement and

10 as required by INDY MAC BANK, F.S.B , Plaintiff Eden Garden executed and delivered to

11 INDY MAC BANK, F.S.B a Promissory Note in the amount of $5,904,000.00 ("the Note"), with

12 a maturity date of March 29, 2007. This maturity date was agreed upon by the parties based upon

13 the expressed expectation that the Project would be completed, and the condominium units sold,

14 by that date.

15   13. The Note is secured by a Construction Trust Deed with Assignment of Rents,

16 Security Agreement and Fixture Filing ("the Deed of Trust") dated September 30, 2005, that was

17 required by INDY MAC BANK, F.S.B and which was executed by Eden Garden as Trustor, to

18 Fidelity National Title Insurance Company, as Trustee, for the benefit of INDY MAC BANK,

19 F.S.B as beneficiary. The Deed of Trust was recorded on or about November 8, 2005, in the

20 Official Records of Santa Clara County, California, as Document No. 18668901. The Deed of

21 Trust encumbers the real property that was to be developed pursuant to the Project, as more

22 particularly described in the Deed of Trust.

23   14. In order to enter into the Loan Agreement, INDY MAC BANK, F.S.B required

24 Plaintiffs Ali and Guiti to execute a General Guaranty (Real Estate Secured Loan) dated

25 September 30, 2005 ("the Amidy Guaranty"), guaranteeing Eden Garden's prompt payment and

26 performance of obligations owed under the Loan Documents. .

27   15. Also in order to enter into the Loan Agreement, INDY MAC BANK, F.S.B

28 required Centra Net to execute a General Guaranty (Real Estate Secured Loan) dated September

COMPLAINT

1   30, 2005 ("the Centra Net Guaranty"), guaranteeing Eden Garden's prompt payment and

2   performance of obligations owed under the Loan Documents.

3       16.    Beginning in or about November 2006, it became apparent to Plaintiffs and INDY

4   MAC BANK, F.S.B that unforeseen circumstances would make it impossible for Eden Garden to

5   complete the Project within the original budget, or to complete the Project by the Note's maturity

6   date of March 29, 2007. These unforeseen circumstances included, without limitation, the

7   discovery that the site had been previously used as a landfill (which had not been disclosed by the

8   seller of the land, and which substantially delayed the site preparation and increased its cost), as

9   well as significant problems that developed with the general contractor and framing subcontractor

10   (the latter of which required the replacement of the framing subcontractor and the correction of

11   framing work that had already been performed). Pursuant to, and as required by, Section 4.11 of

12   the Loan Agreement, Amidy promptly reported all of these developments to IndyMac.

13       17.    Beginning in or about November 2006, Amidy told representatives of INDY MAC

14   BANK, F.S.B [including without limitation "IndyMac Bank Homebuilder Division Workout

15   Manager" Joyce Barrone ("Barrone"), IndyMac "First Vice President" Gary Arnett ("Arnett"),

16   and an individual known to Amidy as "D.J."] that, as a result of the construction problems

17   referred to hereinabove, additional funds would be needed for the Project, and the maturity date

18   of the Note would need to be extended by two years, to March 2009.

19       18.    In response to Amidy's requests for additional financing and a two-year extension

20   of the maturity date of the Note as referred to hereinabove, INDY MAC BANK, F.S.B, in return

21   for an additional loan fee in the amount of $66,540.00, an appraisal fee in the amount of

22   $6,500.00, a Loan Documentation fee in the amount of $300.00, and Title Modification

23   Endorsement and Recording fees in the estimated amount of $609.00, entered into an Additional

24   Advance and First Modification Agreement to the Building Loan Agreement; Promissory Note;

25   Construction Deed of Trust with Assignment of Rents, Security Agreement and Fixture Filing

26   and Other Loan Documents dated February 14, 2007 ("the 2/14/07 Loan Modification").

27   Among other things, the 2/14/07 Loan Modification: (1) increased the loan amount by

28   $916,628.00, to a total of $6,820,628.00 (Section 1(a)); (2) extended the Sales Start Date from

COMPLAINT

1  May 1, 2006, to July 30, 2007 (Section 1(e)); (3) extended the Unit Closings date from August 1,

2  2006, to September 30, 2007 (Section 1(f)); and (4)increased the total minimum Release Prices of

3  the units from $7,084,799.50 to $7,502,988.00 (Section 1(g)).

4        19.    Also in response to Amidy's requests for additional financing and a two-year

5  extension of the maturity date of the Note as referred to hereinabove, INDY MAC BANK, F.S.B

6  IndyMac extended the original maturity date of the Note from March 29, 2007, to March 28,

7  2008. In addition, on numerous occasions beginning in or about November 2006 and continuing

8  through October 2008 (including, without limitation, four in-person meetings at the construction

9  site), Barrone, Arnett, and other apparently authorized INDY MAC BANK, F.S.B employees

10  and/or representatives told Amidy that IndyMac would extend the maturity date of the Note an

11  additional year, if at the end of the first extended period Amidy requested an additional year, and

12  that IndyMac would continue to make disbursements pursuant to the Loan Agreement and

13  reimburse Cross-complainants for their expenses related to the Project, so that the Project could

14  be completed, the Units could be sold, and the Note could be repaid.

15        20.    On numerous occasions beginning in or about December 2007, Amidy told

16  Barrone, Arnett, and other authorized INDY MAC BANK, F.S.B employees and/or

17  representatives that, due to the construction delays referred to hereinabove, it would be necessary

18  to extend the maturity date of the Note from March 2008 to March 2009, as first requested by

19  Amidy beginning in or about November 2006.

20        21.    In response to Amidy's having told IndyMac that, for the reasons set forth

21  hereinabove it would be necessary to extend the maturity date of the Note from March 2008 to

22  March 2009, as first requested by Amidy beginning in or about November 2006, Barrone, Arnett,

23  and other apparently authorized INDY MAC BANK, F.S.B employees and/or representatives

24  informed Amidy that, before IndyMac would consider a modification to the Loan Agreement or

25  Note as requested, the parties would have to enter into a Preworkout Agreement "clarifying the

26  nature of the [workout] discussions" and the terms and conditions upon which such discussions

27  would proceed. On or about March 5, 2008, INDY MAC BANK, F.S.B presented Plaintiffs with

28  a Preworkout Agreement, which was signed by Plaintiffs on or about March 30, 2008 ("the 3/5/08

COMPLAINT

1   Preworkout Agreement"), as a result of INDY MAC BANK, F.S.B's statement that it would not

2   consider a modification to the Loan Agreement or Note if Plaintiffs did not sign it, despite INDY

3   MAC BANK, F.S.B 's prior repeated assurances to Amidy that INDY MAC BANK, F.S.B would

4   extend the maturity date of the Note to March 2009 if Amidy so requested, as hereinabove

5   alleged.

6        22.      After Plaintiffs and INDY MAC BANK, F.S.B entered into the 2/14/07 Loan

7   Modification, INDY MAC BANK, F.S.B breached the agreement by failing to make loan

8   distributions of $1, 462,147.10 as agreed and by failing to extend the maturity date of the Note

9   to March, 2009 as promised. The failure of INDY MAC BANK, F.S.B to make the agreed loan

10  distributions prevented Plaintiffs from completing the Project.

11       23.      On or about July 10. 2008, INDY MAC BANK, F.S.B was closed by the Office of

12  Thrift Supervision, and Defendant FDIC was appointed as receiver ("Receiver") for INDY MAC

13  BANK, F.S.B. Plaintiffs are informed and believe, and thereon allege, that, on the same date, a

14  new institution, IndyMac Federal Bank, FSB ("IndyMac Federal") was chartered, and all of the

15  insured deposits and substantially all of the assets and liabilities of INDY MAC BANK, F.S.B

16  including the claims and cross-claims involved in this litigation, were transferred to IndyMac

17  Federal, which was then placed into conservatorship, with Defendant FDIC appointed as

18  conservator ("Conservator").

19       24.      On November 12, 2008, Defendant FDIC filed suit against Plaintiffs seeking a

20  Judicial Foreclosure of the Deed of Trust secured by the  Project and damages in the Superior

21  Court of California, Santa Clara County, Action Number 108CV127419. Plaintiff answered said

22  lawsuit asserting affirmative defenses of breach of contract, promissory fraud, breach of implied

23  Covenant of Good Faith and Fair Dealing and cross-complained against FDIC for damages based

24  on the same facts and legal theories. Thereafter the matter was set for trial on May 24, 2010.

25       25.      On or about March 10, 2010, Plaintiffs were informed by counsel for Defendant

26  FDIC that Defendant FDIC had sold and assigned  the assets and liabilities that were the subject

27  of the Santa Clara County Superior Court Action Number 108CV127419 to Defendant INDY

28  MAC

COMPLAINT

26.     On or about May 1, 2010 Defendants FDIC and INDY MAC entered into a settlement agreement with Plaintiffs wherein the parties would execute a mutual dismissal Complaint and Cross-complaint in the Santa Clara County Superior Court Action without prejudice and an agreement tolling all claims related to the pending lawsuit until December 31, 2011. Plaintiff were informed in writing by counsel for Defendants that during the tolling period no action would be taken against Plaintiffs and that the parties would enter into negotiations for a workout plan for the Project in which Plaintiffs would find either a buyer or refinancing for the project.

27.     Thereafter on May 5, 2010, Defendants and Plaintiffs executed a mutual dismissal of the Santa Clara County Superior Court Action and the Tolling Agreement. Said agreements were filed with the Superior Court of Santa Clara County on May 6, 2010.

28.     On May 13, 2010, despite the written representations of counsel for Defendants, Defendant INDY MAC recorded a Notice of Default in the obligation owed by Plaintiffs under Loan Agreement and proceeded with a non-judicial foreclosure on the Deed of Trust. Thereafter using the threat of non-judicial foreclosure, Defendants failed to engage in good faith negotiations with Plaintiffs to establish a workout plan.

## FIRST CAUSE OF ACTION

### (Breach of Settlement Agreement)

29.     Plaintiffs hereby incorporate by reference as though fully set forth herein each and every allegation set forth in Paragraphs 1 – 28 above.

30.     Plaintiffs are informed and believe and thereon allege that Defendant INDY MAC has set January 21, 2011 as the date for the trustee's sale of the Project. The trustee's sale of the the Project is in breach of the settlement agreement and the representations of Defendant's counsel that if Plaintiff's dismissed their cross-complaint and signed a tolling agreement, that Defendant INDY MAC would not take any actions against plaintiffs or the Project until December 31, 2011. Any sale of the Project under the Deed of Trust by the trustee is therefore void and may be set aside.

WHEREFORE, Plaintiffs pray for judgment as more fully set forth below

COMPLAINT

## SECOND CAUSE OF ACTION

(Promissory Fraud)

31.     Plaintiffs hereby incorporate by reference as though fully set forth herein each and every allegation set forth in Paragraphs 1 – 28 above

32.     INDY MAC BANK, F.S.B 's assurances to Amidy that IndyMac would extend the maturity date of the Note through March 2009 and that it would continue to make disbursements so that the Project could be completed, the Units sold, and the Note could be repaid, were important to the continued development of the Project, and to Eden Garden's continued business relationship with INDY MAC BANK, F.S.B in connection with the Project.

33.     On each occasion that INDY MAC BANK, F.S.B promised Amidy it would extend the maturity date of the Note through March 2009, and that it would continue to make disbursements so that the Project could be completed, the Units sold, and the Note could be repaid, it did not intend to perform this promise.

34.     On each occasion that INDY MAC BANK, F.S.B Mac promised Amidy it would extend the maturity date of the Note through March 2009, and that it would continue to make disbursements so that the Project could be completed, the Units sold, and the Note could be repaid, it intended that Plaintiffs would rely on this promise.

35.     Because INDY MAC BANK, F.S.B promises were made repeatedly through apparently senior officers Barrone and Arnett with apparent authority to make the statements they made, Cross-complainants justifiably relied on INDY MAC BANK, F.S.B s promises to extend the maturity date of the Note through March 2009, and that it would continue to make disbursements so that the Project could be completed, the Units sold, and the Note could be repaid by, among other things, continuing in the business relationship with IndyMac, entering into the 2/14/07 Loan Modification, and paying an additional loan fee in the amount of $66,540.00, an appraisal fee in the amount of $6,500.00, a Loan Documentation fee in the amount of $300.00, and a Title Modification Endorsement and Recording fees in the estimated amount of $609.00, as well as an additional appraisal fee in 2008 in the amount of $4,500, together with IndyMac legal fees which INDY MAC BANK, F.S.B insisted be paid by Plaintiffs.

COMPLAINT

36. In addition, and also in justifiable reliance upon INDY MAC BANK, F.S.B repeated promises to extend the maturity date of the Note through March 2009, and that it would continue to make disbursements so that the Project could be completed, the Units sold, and the Note could be repaid, Plaintiffs were induced to, and did, continue in their business relationship with INDY MAC BANK, F.S.B continued to invest their own money (in the approximate amount of $900,000) into the Project, and refrained from seeking and obtaining alternative solutions to saving Plaintiffs' significant investment in the Project and saving the Project from collapse, including without limitation selling the Project, obtaining another lender, obtaining a joint venture partner, syndicating the Project, or otherwise taking action to bring in additional capital so that the Project could be completed, the Units sold, and the Note repaid.

37. INDY MAC BANK, F.S.B has not performed its promises to extend the maturity date of the Note through March 2009, and to continue to make disbursements so that the Project could be completed, the Units sold, and the Note could be repaid, as IndyMac promised it would, and instead declared the Note to be in default, failed to make any disbursements to Eden Garden since March 2008 thereby making it impossible for Eden Garden to complete the Project, sell the Units, and pay off the Note, .

38. As a direct and proximate result of INDY MAC BANK, F.S.B 's failure to perform its promises to extend the maturity date of the Note beyond March 2008 and its failure to make disbursements to Eden Garden since March 2008, it has been impossible for Eden Garden to complete the Project and to sell the Units as originally planned, as a result of which Cross-complainants have suffered damages in excess of the jurisdictional minimum of this court, including without limitation the loss of Eden Garden's original investment in the Project as well as substantial additional funds (approximately $900,000) provided by Eden Garden in an attempt to keep the Project from failing, substantial increases in the cost of completing the Project resulting from the loss of the Project's original contractors, and the additional sums paid to IndyMac by way of loan, appraisal, title, legal, and other related fees and expenses demanded by IndyMac in connection with the 2/14/07 Loan Modification and the 3/5/08 Preworkout Agreement.

COMPLAINT

39.     As a further direct and proximate result of INDY MAC BANK, F.S.B 's failure to perform its promises to extend the maturity date of the Note beyond March 2008 and its failure to make disbursements to Eden Garden since March 2008, Eden Garden will lose the profits that should have resulted from the sale of the Units, after more than three years of time, effort, and financial investment by Plaintiffs, in a sum in excess of the jurisdictional minimum of this Court.

40.     Plaintiffs' reliance upon the repeated promises of INDY MAC BANK, F.S.B to extend the maturity date of the Note to March 2009 and to make disbursements to Eden Garden to complete the Project was a substantial factor in causing the damages to Plaintiffs as hereinabove alleged.

41.     Pursuant to the express provisions of the Loan Agreement, the Note, the Deed of Trust, the Amidy Guaranty, and the Centra Net Guaranty, Plaintiffs are entitled to recover reasonable attorneys' fees incurred herein.

WHEREFORE, Plaintiffs pray for judgment as more fully set forth below.

### THIRD CAUSE OF ACTION

#### (Negligent Misrepresentation)

42.     Plaintiffs hereby incorporate by reference as though fully set forth herein each and every allegation set forth in Paragraphs 1 – 41, above.

43.     When INDY MAC BANK, F.S.B promised that it would extend the maturity date of the Note beyond March 2008 and that it would continue to make disbursements pursuant to the Loan Agreement so that the Project could be completed, it had no reasonable grounds for believing that it would honor these promises.

WHEREFORE, Plaintiffs pray for judgment as more fully set forth below.

### FOURTH CAUSE OF ACTION

#### (Fraud in the Inducement – Loan Agreement, Note, Trust Deed, Amidy Guaranty, and Centra Net Guaranty)

44.     Plaintiffs hereby incorporate by reference as though fully set forth herein each and every allegation set forth in Paragraphs 1 – 35, above.

1    45.    Before entering into the Loan Agreement, the Note, the Trust Deed, the Amidy

2    Guaranty, and the Centra Net Guaranty, IndyMac assured Plaintiffs that, if the maturity date of

3    the Note needed to be extended in order to complete the Project, INDY MAC BANK, F.S.B

4    would do so, and INDY MAC BANK, F.S.B would continue to make disbursements so that the

5    Project could be completed, the Units sold, and the Note repaid.

6    46.    INDY MAC BANK, F.S.B assurances to Plaintiffs that, if the maturity date of the

7    Note needed to be extended in order to complete the Project, INDY MAC BANK, F.S.B would

8    do so, and INDY MAC BANK, F.S.B would continue to make disbursements so that the Project

9    could be completed, the Units sold, and the Note repaid, were important in Plaintiffs' decision to

10   enter into the Loan Agreement, the Note, the Trust Deed, the Amidy Guarantee, and the Centra

11   Net Guaranty, and in Plaintiffs' decision to proceed with the development of the Project with

12   IndyMac.

13   47.    At the time INDY MAC BANK, F.S.B assured Plaintiffs that, if the maturity date

14   of the Note needed to be extended in order to complete the Project, IndyMac would do so, and

15   IndyMac would continue to make disbursements so that the Project could be completed, the Units

16   sold, and the Note repaid, INDY MAC BANK, F.S.B knew that such assurances were false.

17   48.    At the time INDY MAC BANK, F.S.B assured Plaintiffs that, if the maturity date

18   of the Note needed to be extended in order to complete the Project, IndyMac would do so, and

19   IndyMac would continue to make disbursements so that the Project could be completed, the Units

20   sold, and the Note repaid, IndyMac intended that Plaintiffs would rely on such assurances.

21   49.    Because INDY MAC BANK, F.S.B 's promises were made repeatedly through

22   apparently senior officers Barrone and Arnett with apparent authority to make the statements they

23   made, Plaintiffs justifiably relied upon INDY MAC BANK, F.S.B 's assurances that, if the

24   maturity date of the Note needed to be extended in order to complete the Project, IndyMac would

25   do so, and IndyMac would continue to make disbursements so that the Project could be

26   completed, the Units sold, and the Note repaid, by entering into the Loan Agreement, the Note,

27   the Trust Deed, the Amidy Guaranty, and the Centra Net Guaranty, by developing the Project

28   with INDY MAC BANK, F.S.B serving as construction lender, and by paying to INDY MAC

COMPLAINT

1   BANK, F.S.B substantial sums, in excess of the jurisdictional minimum of this Court, by way of

2   loan fees, interest, and related costs and expenses.

3       50.    But for INDY MAC BANK, F.S.B 's assurances as hereinabove alleged, Plainitffs

4   would not have entered into these agreements, and would not have developed the Project with

5   INDY MAC BANK, F.S.B serving as construction lender.

6       51.    INDY MAC BANK, F.S.B failed to honor its assurances that that, if the maturity

7   date of the Note needed to be extended in order to complete the Project, INDY MAC BANK,

8   F.S.B would do so, and that INDY MAC BANK, F.S.B would continue to make disbursements

9   so that the Project could be completed, the Units sold, and the Note repaid, and instead declared

10  the Note to be in default, failed to make any disbursements to Eden Garden since March 2008

11  thereby making it impossible for Eden Garden to complete the Project, sell the Units, and pay off

12  the Note.

13      52.    As a direct and proximate result of INDY MAC BANK, F.S.B' s failure to honor

14  its assurances that that, if the maturity date of the Note needed to be extended in order to

15  complete the Project, INDY MAC BANK, F.S.B would do so, and that INDY MAC BANK,

16  F.S.B would continue to make disbursements so that the Project could be completed, the Units

17  sold, and the Note repaid, and of INDY MAC BANK, F.S.B 's failure to make disbursements to

18  Eden Garden since March 2008, it has been impossible for Eden Garden to complete the Project

19  and to sell the Units as originally planned, as a result of which Plaintiffs have suffered damages in

20  excess of the jurisdictional minimum of this Court, including without limitation the loss of Eden

21  Garden's original investment in the Project as well as substantial additional funds (approximately

22  $900,000) provided by Eden Garden in an attempt to keep the Project from failing, substantial

23  increases in the cost of completing the Project resulting from the loss of the Project's original

24  contractors, and the additional sums paid to INDY MAC BANK, F.S.B by way of loan,

25  appraisal, title, legal, and other related fees and expenses demanded by IndyMac in connection

26  with the 2/14/07 Loan Modification and the 3/5/08 Preworkout Agreement.

27      53.    As a further direct and proximate result of INDY MAC BANK, F.S.B to honor its

28  assurances that that, if the maturity date of the Note needed to be extended in order to complete

1    the Project, INDY MAC BANK, F.S.B would do so, and that INDY MAC BANK, F.S.B would

2    continue to make disbursements so that the Project could be completed, the Units sold, and the

3    Note repaid, and of INDY MAC BANK, F.S.B 's failure to make disbursements to Eden Garden

4    since March 2008, Eden Garden will lose the profits that should have resulted from the sale of the

5    Units, after more than three years of time, effort, and financial investment by Plaintiffs, in a sum

6    in excess of the jurisdictional minimum of this Court.

7        54.    As a further direct and proximate result of INDY MAC BANK, F.S.B failure to

8    honor its assurances that that, if the maturity date of the Note needed to be extended in order to

9    complete the Project, INDY MAC BANK, F.S.B would do so, and that INDY MAC BANK,

10   F.S.B would continue to make disbursements so that the Project could be completed, the Units

11   sold, and the Note repaid, and of INDY MAC BANK, F.S.B 's failure to make disbursements to

12   Eden Garden since March 2008, it has become impossible for Eden Garden to repay the Note and

13   IndyMac has sued Guiti, Amidy, and Centra Net on their respective Guaranties, to the damage of

14   Guiti, Amidy, and Centra Net in an amount in excess of the jurisdictional minimum of this Court.

15       55.    Plaintiffs' reliance upon INDY MAC BANK, F.S.B 's assurances that that, if the

16   maturity date of the Note needed to be extended in order to complete the Project, INDY MAC

17   BANK, F.S.B would do so, and that INDY MAC BANK, F.S.B would continue to make

18   disbursements so that the Project could be completed, the Units sold, and the Note repaid, was a

19   substantial factor in causing the damages to Plaintiffs as hereinabove alleged.

20       56.    Pursuant to the express provisions of the Loan Agreement, the Note, the Deed of

21   Trust, the Amidy Guaranty, and the Centra Net Guaranty, Plaintiffs are entitled to recover

22   reasonable attorneys' fees incurred herein.

23       WHEREFORE, Plaintiffs pray for judgment as more fully set forth below.

24       1)    For an Order vacating any trustee's sale of the Project

25       2)    For general and special damages in an amount to be determined at trial;

26       3)    For pre- and post-judgment interest at the legal rate;

27       4)    For attorneys' fees incurred herein;

28       5)    For costs of suit incurred herein; and

COMPLAINT

1    6)    For such other and further relief as the Court may deem just and proper.

2   Dated: _____

3

4                                         _____
                                          W. KENNETH HOWARD, Attorney for
5                                         Plaintiffs

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

CONFORMED COPY: This document has
not been compared with the original.
SANTA CLARA COUNTY CLERK-RECORDER

Doc#: 21054019
7/20/2011   10:34 AM

RECEIVED
JAN 25 2011
Legal WCTSO
FDIC

1
2   WHEN RECORDED MAIL TO

    W. KENNETH HOWARD  (SBN 129061)
3   Attorney at Law
    116 East Campbell Ave. #7
4   Campbell, CA 95008
    408-379-1904
5   Fax 408-379-1902

6

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                IN AND FOR THE COUNTY OF SANTA CLARA

9   EDEN GARDEN LLC, a California limited        CASE NO. 11CV192197
    liability company; ALI K. AMIDY, an
10  individual; GUITI NAHAVANDI AMIDY,           NOTICE OF PENDENCY OF ACTION
    an individual; CENTRA NET
11  INVESTMENT LLC, a California limited
    liability company;
12
                    Plaintiffs,
13
        vs.
14
    INDY MAC VENTURE, LLC, a Limited
15  Liability Company, FEDERAL DEPOSIT
    INSURANCE CORPORATION, as
16  Conservator of IndyMac Federal Bank,
    FSB, and Does 1 through 10
17
                    Defendants
18

19  NOTICE IS HEREBY GIVEN THAT Plaintiffs in the above entitled action have filed suit
20  against INDY MAC VENTURE, LLC, a Limited Liability Company, FEDERAL DEPOSIT
    INSURANCE CORPORATION, as Conservator of IndyMac Federal Bank, FSB, and Does 1
21  through 10 in the Superior Court of California, County of Santa Clara Action No.111CV192197.
    Said action effects title to the real property the legal description of which is :

22  Lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18 and 19, as shown upon that certain map
    entitled "Tract No. 9484" and filed June 16, 2005 in Book 787 of Maps, at Page 42, in the County of Santa
23  Clara, State of California.
    APN's: 455-52-036 through 053
24

25

26  Dated   January 19, 2011
                                        W. Kenneth Howard,
27                                      Attorney for Plaintiffs

28

    COMPLAINT

## PROOF OF SERVICE BY CERTIFIED MAIL

I am a citizen of the United States and a resident of the county of Santa Clara, State of California.  I am over the age of eighteen years and not a party to the within entitled action; my business address is: 116 East Campbell Avenue #7, Campbell, CA 95008.  On January 19, 2011, I served the Notice of Pendency of Action attached hereto by Certified Mail with return receipt requested on

INDY MAC VENTURES, LLL
c/o Sheppard, Mullin Richter & Hampton
650 Town Center Drive, 4th Fl.
Costa Mesa, CA 92626

FEDERAL DEPOSIT INSURANCE CORP.
c/o Stephen Kessler, Managing Counsel
40 Pacifica
Irvine CA 92618

I declare, under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed at Campbell, California.

DATED: 1/19/2011

Thomas B. Kidwell

W. Kenneth Howard
Attorney at Law
116 East Campbell Ave. # 7
Campbell, CA 95008

RETURN RECEIPT
REQUESTED

7010 0290 0003 2209 5552

Federal Deposit Insurance Corp.
c/o Stephen Kessler
Managing Counsel
40 Pacifica
Irvine, CA 92618

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT "B"**

NOTICE OF REMOVAL OF CIVIL ACTION BY FEDERAL DEPOSIT INSURANCE      No. 1-11-CV-I92197
CORPORATION AS RECEIVER FOR INDYMAC FEDERAL BANK, FSB

# Office of Thrift Supervision
### Department of the Treasury



I certify that annexed hereto is a true copy of the document described below made from records of the Office of Thrift Supervision, Department of the Treasury.

Copy of the Office of Thrift Supervision Order Number 2009-17, executed on March 19, 2009, appointing a receiver for IndyMac Federal Bank, FSB, Pasadena, California, consisting of two (2) pages.

Signed this 19th day of March, 2009

*Kevin A. Corcoran*

Kevin A. Corcoran
Deputy Chief Counsel
  for Business Transactions

## OFFICE OF THRIFT SUPERVISION

### Receivership Of A Federal Savings Association

**Date: March 19, 2009**

**Order No.: 2009-17**

The Acting Director of the Office of Thrift Supervision (OTS), or his designee, in cooperation with the Federal Deposit Insurance Corporation (FDIC), has determined: (1) to replace the FDIC as conservator for IndyMac Federal Bank, FSB, Pasadena, California, OTS No. 18115, (IndyMac) with the FDIC as receiver; and (2) to appoint the FDIC as receiver for IndyMac.

### I. GROUNDS FOR ACTIONS TAKEN IN THIS ORDER

### REPLACEMENT OF THE CONSERVATOR WITH FDIC AS RECEIVER

The Acting Director or his designee has determined to exercise the Acting Director's discretion to replace the FDIC as conservator of IndyMac with the FDIC as a receiver pursuant to the authority granted in section 5(d)(2)(C) of the Home Owners' Loan Act (HOLA), 12 U.S.C. § 1464(d)(2)(C).

### APPOINTMENT OF FDIC AS RECEIVER FOR INDYMAC

The Acting Director, or his designee, based upon the administrative record finds and concludes that: (1) IndyMac has reported that it is critically undercapitalized; and (2) the FDIC in its capacity to act for the Board of Directors and members of IndyMac,[1] has by resolution, consented to the appointment of a receiver.

The Director, or his designee, therefore, has determined that grounds for the appointment of a receiver for IndyMac exist under section 5(d)(2) of the HOLA, 12 U.S.C. § 1464(d)(2) and section 11(c)(5) of the FDIA, 12 U.S.C. § 1821(c)(5).

### II. ACTIONS ORDERED OR APPROVED:

### REPLACEMENT OF A CONSERVATOR WITH A RECEIVER AND APPOINTMENT OF A RECEIVER

The Acting Director, or his designee, hereby replaces the FDIC as conservator for IndyMac with the FDIC as receiver for IndyMac, pursuant to section 5(d)(2)(C) of HOLA, 12 U.S.C. § 1464(d)(2)(C).

---

[1]  See 12 U.S.C. §§ 1464(d)(2)(E), 1821(d)(2)(A).

OTS Order No. 2009-17
Page 2

Alternatively, the Acting Director, or his designee, hereby appoints the FDIC as receiver for IndyMac, pursuant to section 5(d)(2) of HOLA, 12 U.S.C. §1464(d)(2), and section 11(c)(6)(B) of the FDIA, 12 U.S.C. § 1821(c)(6)(B).

## III. DELEGATION OF AUTHORITY TO ACT FOR OTS

The Acting Director, or his designee, hereby authorizes the OTS West Region Director, or his designee, and the Deputy Chief Counsel for the Business Transactions Division of the Chief Counsel's office, or his designee, to: (1) certify orders; (2) sign, execute, attest or certify other documents of OTS issued or authorized by this Order; (3) designate the person or entity that will give notice of the replacement of the conservator with a receiver and the appointment of a receiver for IndyMac and serve a copy of this Order pursuant to 12 C.F.R. Part 558; and (4) perform such other functions of OTS necessary or appropriate for implementation of this Order. All documents to be issued under the authority of this Order must be first approved, in form and content, by the Chief Counsel's Office. In addition, the Acting Director, or his designee, hereby authorizes the Deputy Chief Counsel for the Business Transactions Division of the Chief Counsel's office, or his designee, to make any subsequent technical corrections, that might be necessary, to this Order or any documents issued under the authority of this Order.

By Order of the Acting Director of OTS, effective March 19, 2009, upon service on IndyMac.

Scott M. Polakoff
Acting Director

Re:        Eden Garden LLC, et al. v. IndyMac Venture, LLC, et al.
Court:     Santa Clara County Superior Court
Action No: No. 1-11-CV-192197

## PROOF OF SERVICE

I declare that I am over the age of 18, not a party to the above-entitled action, and am an employee of Burnham Brown whose business address is 1901 Harrison Street, 11th Floor, Oakland, Alameda County, California 94612 (mailing address: Post Office Box 119, Oakland, California 94604).

On May 12, 2011, I served the following document(s) in the following manner(s):

## NOTICE OF REMOVAL OF CIVIL ACTION BY FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR INDYMAC FEDERAL BANK, FSB

☒      **MAIL:** By placing the document(s) listed above in a sealed envelope with postage thereon on the date and place shown below following ordinary business practice. I am familiar with this business' practice for collecting and processing documents for mailing. On the same day that documents are placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

W. Kenneth Howard, Esq.                    Counsel for Plaintiffs
Attorney at Law
116 East Campbell Avenue, #7
Campbell, CA 95008
Tel:    (408) 379-1904
Fax:    (408) 379-1902

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATE:    May 12, 2011

_____
Gail D. Richardson

PROOF OF SERVICE                                CASE NO. 1-11-CV-192197