1  A. KRISTINE FLOYD (BAR NO. 155930)
   ALLEN MATKINS LECK GAMBLE
2     MALLORY & NATSIS LLP
   1900 Main Street, Fifth Floor
3  Irvine, California 92614-7321
   Phone:  (949) 553-1313
4  Fax:  (949) 553-8354
   E-Mail:  kfloyd@allenmatkins.com
5
   Attorneys for Defendant and Counterclaimant
6  INDYMAC VENTURE, LLC

7

8                UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10 EDEN GARDEN, LLC, a California      Case No. CV11-02356-JF
   limited liability company; ALI K.
11 AMIDY, an individual; GUITI         **DEFENDANT INDYMAC VENTURE
   NAHAVANDI AMIDY, an individual;     LLC'S REQUEST FOR JUDICIAL
12 CENTRA NET INVESTMENT LLC, a        NOTICE IN SUPPORT OF MOTION
   California limited liability company, TO EXPUNGE *LIS PENDENS***
13
                Plaintiffs,            *[Filed concurrently with Motion to
14                                     Expunge Lis Pendens; Memorandum of
        v.                             Points and Authorities, Declarations of
15                                     Alisa Ashikyan and Nicholas S. Shantar
   INDY MAC VENTURE, LLC, a limited    and Request for Judicial Notice in
16 liability company; FEDERAL DEPOSIT  Support of Motion to Expunge]*
   INSURANCE CORPORATION, as
17 Conservator of IndyMac Federal Bank, Date:  August 5, 2011
   FSB, and Does 1 through 10,          Time: 9:00 a.m.
18                                      Ctrm: 3, Fifth Floor
                Defendants.
19 ──────────────────────────────      Complaint Filed:  May 13, 2011

20 INDYMAC VENTURE, LLC, a limited
   liability company,
21
                Counterclaimant,
22
        v.
23
   ALI K. AMIDY, an individual; GUITI
24 NAHAVANDI AMIDY, an individual;
   CENTRA NET INVESTMENT LLC, a
25 California limited liability company,

26              Counterdefendants.

27

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

928681.01/OC

REQUEST FOR JUDICIAL NOTICE IN
SUPPORT OF MOTION TO EXPUNGE LIS
PENDENS

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT, pursuant to Rule 201 of the Federal Rules of Evidence and the authorities cited below, Defendant and Cross-complainant Indymac Venture, LLC ("IMV") respectfully requests that the Court take judicial notice of the following documents filed in support of its Motion to Expunge the *Lis Pendens* filed by Plaintiffs Eden Garden, LLC, Ali K. Amidy, Guiti Nahavandi Amidy, and Centra Net Investment, LLC (collectively, "Plaintiffs").

1.      The Complaint filed herein by Plaintiffs on or about January 19, 2011, a true and correct copy of which is attached hereto as Exhibit 1.

2.      Pages 59540 and 59541 of Volume 74 of the Federal Register dated November 18, 2009, a true and correct copy of which is attached hereto as Exhibit 2.

3.      The Notice of Pendency of Action (*Lis Pendens*) filed herein by Plaintiffs on or about January 19, 2011 and recorded in the Santa Clara County Recorder's office on or about January 20, 2011 as Document No. 21054819, a true and correct copy of which is attached hereto as Exhibit 3.

### BASIS FOR REQUESTING JUDICIAL NOTICE

Federal Rule of Evidence Rule 201 sets forth the matters to which the Court may take judicial notice.  It provides in pertinent part:  "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

Each of the above-referenced documents is a proper subject of judicial notice. Exhibits 1 and 3 are records in this case filed by Plaintiffs in State court, before the case was removed to this Court by Defendant Federal Deposit Insurance Corporation.  See U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (citing St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169 (10th Cir. 1979)) ("[W]e 'may take notice of proceedings in other

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

928681.01/OC

-1-

REQUEST FOR JUDICIAL NOTICE IN
SUPPORT OF MOTION TO EXPUNGE LIS
PENDENS

courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'").  Exhibit 2 is an official act of the Federal Deposit Insurance Corporation, which forms a part of the executive department of the United States and its existence and the contents relied upon "are not subject to reasonable dispute" and are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Accordingly, IMV respectfully requests that the Court take judicial notice of the foregoing documents.

Dated:  June 21, 2011                     ALLEN MATKINS LECK GAMBLE
                                          MALLORY & NATSIS LLP
                                          A. KRISTINE FLOYD


                                          By: /s/ Nicholas S. Shantar
                                          _____
                                              NICHOLAS S. SHANTAR
                                              Attorneys for Defendant and Cross-
                                              complainant INDYMAC VENTURE,
                                              LLC

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

928681.01/OC

-2-

REQUEST FOR JUDICIAL NOTICE IN
SUPPORT OF MOTION TO EXPUNGE LIS
PENDENS

1   W. KENNETH HOWARD  (SBN 129061)
    Attorney at Law
2   116 East Campbell Ave. #7
    Campbell, CA 95008
3   408-379-1904
    Fax 408-379-1902
4

5

6

7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              IN AND FOR THE COUNTY OF SANTA CLARA

10                          1 1 1 C V 1 9 2 1 9 7

11   EDEN GARDEN LLC, a California limited      CASE NO.
     liability company; ALI K. AMIDY, an
12   individual; GUITI NAHAVANDI AMIDY,         COMPLAINT FOR:
     an individual; CENTRA NET
13   INVESTMENT LLC, a California limited
     liability company;                         1)  Breach of Settlement Agreement and
14                                                  Order Vacating Trustee's Sale
                                                2)  Promissory Fraud;
15               Plaintiffs,                    3)  Negligent Misrepresentation;
                                               4)  Fraud in the Inducement – Loan
16        vs.                                       Agreement, Note, Trust Deed, Amidy
                                                   Guaranty, and Centra Net Guaranty
17   INDY MAC VENTURE, LLC, a Limited
     Liability Company, FEDERAL DEPOSIT
18   INSURANCE CORPORATION, as
     Conservator of IndyMac Federal Bank,
19   FSB, and Does 1 through 10

20               Defendants

21

22        Plaintiffs  EDEN GARDEN LLC, a California limited liability company ("Eden

23   Garden"), ALI K. AMIDY, an individual ("Ali"), GUITI NAHAVANDI AMIDY, an individual

24   ("Guiti"), and CENTRA NET INVESTMENT LLC, a California limited liability company

25   ("Centra Net") (collectively, "Plaintiffs") complain and allege against INDY MAC VENTURES,

26   LLC, FEDERAL DEPOSIT INSURANCE CORPORATION, and Does 1 through 10 as follows:

27

28

    COMPLAINT

                                                               **EXHIBIT  1**

1

## THE PARTIES

2       1.      Plaintiff Eden Garden is a limited liability company formed and existing under the

3   laws of the State of California, and at all times relevant herein was doing business in the State of

4   California, County of Santa Clara.  Eden Garden was formed for the purpose of developing and

5   selling an 18-unit condominium project in San Jose, California, to be known as "Eden Garden

6   Townhomes" ("the Project") the legal description of which is attached hereto as Exhibit A..

7       2.      Plaintiffs Ali and Guiti are individuals, and at all times relevant herein were

8   residing and/or doing business in the State of California, County of Santa Clara.  At all times

9   relevant herein, Plaintiff Ali was the Managing Member of Eden Garden.

10      3.      Plaintiff Centra Net is a limited liability company formed and existing under the

11  laws of the State of California, and at all times relevant herein was doing business in the State of

12  California, County of Santa Clara.  At all times relevant herein, Plaintiff Ali was the Managing

13  Member of Centra Net.

14      4.      Plaintiffs are informed and believe, and thereon allege, that Defendant, FEDERAL

15  DEPOSIT INSURANCE CORPORATION (hereafter " FDIC")  is, and at all times relevant

16  herein was, a corporation organized and existing pursuant to an Act of Congress of the United

17  States known as the Federal Deposit Insurance Act, 12 U.S.C. § 1811, et sea., with its principal

18  place of business located in Washington, D.C.

19      5.      Plaintiffs are informed and believe and thereon allege, that Defendant INDYMAC

20  VENTURE, LLC,  (hereafter "INDYMAC") is a limited liability company  and the successor in

21  interest and assignee of certain assets of  INDY MAC BANK, F.S.B, including the Loan

22  Agreements, promissory notes, deed of trust and associated claims and cross-claims involved in

23  this litigation.

24      6.      Plaintiffs are ignorant of the true names and capacities of Defendants sued herein

25  as Does 1 through 10, inclusive, and therefore sue these defendants by such fictitious names.

26  Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.

27  Plaintiffs are informed and believe, and thereon allege, that each of the fictitiously named

28  Defendants is in some way involved in and/or responsible for the events, transactions, or

COMPLAINT

**EXHIBIT 1**

1    occurrences alleged in this Complaint, as well as the damages caused to Plaintiffs as set forth

2    below.

3          7.          Plaintiffs are informed and believe, and thereon allege, that at all times relevant

4    herein Plaintiffs, and each of them, were acting as agents, servants, employees, joint venturers, or

5    representatives of each other, and were acting within the full course and scope of their agency,

6    employment and joint venture with the full knowledge, consent, permission, acquiescence and

7    ratification, either express or implied, of each of the other Defendants in performing the acts

8    alleged in this Complaint.

9                              **GENERAL ALLEGATIONS**

10         8.          On September 30, 2005, Plaintiff Eden Garden and INDY MAC BANK, F.S.B

11   entered into a Building Loan Agreement ("the Loan Agreement"), wherein INDY MAC BANK,

12   F.S.B agreed to make a loan to Eden Garden, in the amount of $5,904,000.00, for the

13   construction of the Project. The total Project cost was expected to be in the amount of

14   $7,667,490.00, with Plaintiffs contributing $1,763,490.00 in cash and equity.

15         9.          Section 3.00 of the Loan Agreement provides as follows:

16                    "Disbursements, Set Aside Letters and Letters of Credit. Subject to the

17                    terms, conditions and procedures set forth in this Agreement and in the

18                    'Disbursement Schedule' attached as Exhibit 'B', the Lender shall make

19                    Disbursements to or for the account of the Borrower…from time to time

20                    from the date of this Agreement to the Banking Day immediately preceding

21                    the Maturity Date.

22              Section (b) of Exhibit "B" to the Loan Agreement provides as follows:

23                    "Method of Disbursement. Subject to fulfillment of all applicable

24                    conditions and the terms and procedures set forth in the Agreement and this

25                    Disbursement Schedule: (i) each Disbursement shall be made on the basis

26                    of a Disbursement Request submitted (in duplicate) by the Borrower to the

27                    Lender,…"

28              Section (f) of Exhibit "B" to the Loan Agreement provides as follows:

COMPLAINT

**EXHIBIT 1**

1    "Deposit of Borrower's Funds.  Prior to the first Disbursement..., the

2    Borrower shall deposit with the Lender Borrower's Funds in an amount

3    equal to all 'Additional Costs To Be Paid By Borrower' set forth in the

4    original Project Budget, and the Borrower may from time to time deposit

5    additional Borrower's Funds with the Lender as the Borrower deems

6    appropriate to cover any increase in Project Costs...."

7    Section (g) of Exhibit "B" to the Loan Agreement provides as follows:

8    "Disbursement Controls.  Notwithstanding anything in this Exhibit 'B' to

9    the contrary, the disbursement controls shall be as follows:...Frequency of

10   Disbursement...1-2 a month."

11   Section 4.01 of the Loan Agreement provides as follows:

12   "Construction of Improvements.  The Borrower shall cause construction of

13   the improvements to commence immediately after the date the Trust Deed

14   is recorded, and shall be diligently and continuously prosecuted to

15   completion....(d) construction of the improvements shall in any event be

16   completed on or before the Maturity Date...."

17   Section 4.05 of the Loan Agreement provides as follows:

18   "Lien Priority and Restrictions on Sale or Encumbrance; Partial

19   Releases...(i) the Borrower may sell Units (together with undivided

20   interests in common areas to be transferred to purchasers of such Units) in

21   the ordinary course of business for an amount not less than the 'Minimum

22   Sales Price' set forth in Exhibit 'E'...(iii) the Borrower may, in the

23   ordinary course of business, receive, hold and dispose of any excess

24   proceeds resulting from the sale of any Unit after payment of the applicable

25   'Release Price';...The amount of any 'Release Price' received by the

26   Lender shall be applied to the principal of the Note,..."

27   Exhibit "E" to the Loan Agreement set forth the Minimum Sales Price and the

28   Release Price of each Unit.

COMPLAINT

**EXHIBIT 1**

Section 4.11 of the Loan Agreement provides as follows:

"Construction Information and Reporting Requirements. The Borrower shall cause to be delivered to the Lender, in forma and detail satisfactory to the Lender:

(a) promptly after discovery by the Borrower, notice of (i) any fact or circumstance that may or will cause the Project Costs associated with any Line Item to exceed or be less than the corresponding amount set forth in the Project Budget or the Line Item Budget by more than 5%, or that may or will cause any Project Costs for any matters not covered by specific Line Items to exceed, in the aggregate, $50,000;..(iii) any actual or anticipated material delays in construction;..(v) the occurrence or allegation of any termination, material breach or default, or failure of any material condition or other requirement under the...Construction Contract,..(x) any event which has or may have a material adverse impact on the Collateral or the Project,..."

Section J. of Exhibit "C" to the Loan Agreement provides as follows:

"Sales Start Date: The Borrower shall cause the first Unit to be available for sale no later than May 1, 2006."

Section L. of Exhibit "C" to the Loan Agreement provides as follows:

"Unit Closings. The Borrower shall cause the first Unit to close no later than August 1, 2006 and shall cause not less than three (3) Units to be closed during each month, commencing after the first Unit closing or August 1, 2006, whichever is sooner."

10.     Pursuant to Section (f) of Exhibit "B" to the Loan Agreement, Plaintiff Eden Garden deposited with INDY MAC BANK, F.S.B funds for the "Additional Costs To Be Paid By Borrower" as required by the Loan Agreement, in an amount in excess of the jurisdictional minimum of this Court.

COMPLAINT

**EXHIBIT 1**

11.    Pursuant to the Loan Agreement as set forth above, it was understood and agreed between INDY MAC BANK, F.S.B and Plaintiffs that funds under the loan were to be released to Eden Garden by way of Disbursements as construction on the Project progressed, from the beginning of the Project until its completion. It was further understood and agreed between INDY MAC BANK, F.S.B and Eden Garden, as reflected in the Loan Agreement (including without limitation Sections 4.05, Exhibit "E" to the Loan Agreement, and Sections J. and L. of Exhibit "C" to the Loan Agreement as set forth above), that the construction loan was to be repaid out of the proceeds of sale of the condominiums upon completion of the Project.

12.    On or about September 30, 2005, and in connection with the Loan Agreement and as required by INDY MAC BANK, F.S.B , Plaintiff Eden Garden executed and delivered to INDY MAC BANK, F.S.B a Promissory Note in the amount of $5,904,000.00 ("the Note"), with a maturity date of March 29, 2007. This maturity date was agreed upon by the parties based upon the expressed expectation that the Project would be completed, and the condominium units sold, by that date.

13.    The Note is secured by a Construction Trust Deed with Assignment of Rents, Security Agreement and Fixture Filing ("the Deed of Trust") dated September 30, 2005, that was required by INDY MAC BANK, F.S.B and which was executed by Eden Garden as Trustor, to Fidelity National Title Insurance Company, as Trustee, for the benefit of INDY MAC BANK, F.S.B as beneficiary. The Deed of Trust was recorded on or about November 8, 2005, in the Official Records of Santa Clara County, California, as Document No. 18668901. The Deed of Trust encumbers the real property that was to be developed pursuant to the Project, as more particularly described in the Deed of Trust.

14.    In order to enter into the Loan Agreement, INDY MAC BANK, F.S.B required Plaintiffs Ali and Guiti to execute a General Guaranty (Real Estate Secured Loan) dated September 30, 2005 ("the Amidy Guaranty"), guaranteeing Eden Garden's prompt payment and performance of obligations owed under the Loan Documents. .

15.    Also in order to enter into the Loan Agreement, INDY MAC BANK, F.S.B required Centra Net to execute a General Guaranty (Real Estate Secured Loan) dated September

COMPLAINT

**EXHIBIT  1**

1  30, 2005 ("the Centra Net Guaranty"), guaranteeing Eden Garden's prompt payment and

2  performance of obligations owed under the Loan Documents.

3      16.     Beginning in or about November 2006, it became apparent to Plaintiffs and INDY

4  MAC BANK, F.S.B that unforeseen circumstances would make it impossible for Eden Garden to

5  complete the Project within the original budget, or to complete the Project by the Note's maturity

6  date of March 29, 2007. These unforeseen circumstances included, without limitation, the

7  discovery that the site had been previously used as a landfill (which had not been disclosed by the

8  seller of the land, and which substantially delayed the site preparation and increased its cost), as

9  well as significant problems that developed with the general contractor and framing subcontractor

10 (the latter of which required the replacement of the framing subcontractor and the correction of

11 framing work that had already been performed). Pursuant to, and as required by, Section 4.11 of

12 the Loan Agreement, Amidy promptly reported all of these developments to IndyMac.

13     17.     Beginning in or about November 2006, Amidy told representatives of INDY MAC

14 BANK, F.S.B [including without limitation "IndyMac Bank Homebuilder Division Workout

15 Manager" Joyce Barrone ("Barrone"), IndyMac "First Vice President" Gary Arnett ("Arnett"),

16 and an individual known to Amidy as "D.J."] that, as a result of the construction problems

17 referred to hereinabove, additional funds would be needed for the Project, and the maturity date

18 of the Note would need to be extended by two years, to March 2009.

19     18.     In response to Amidy's requests for additional financing and a two-year extension

20 of the maturity date of the Note as referred to hereinabove, INDY MAC BANK, F.S.B, in return

21 for an additional loan fee in the amount of $66,540.00, an appraisal fee in the amount of

22 $6,500.00, a Loan Documentation fee in the amount of $300.00, and Title Modification

23 Endorsement and Recording fees in the estimated amount of $609.00, entered into an Additional

24 Advance and First Modification Agreement to the Building Loan Agreement; Promissory Note;

25 Construction Deed of Trust with Assignment of Rents, Security Agreement and Fixture Filing

26 and Other Loan Documents dated February 14, 2007 ("the 2/14/07 Loan Modification").

27 Among other things, the 2/14/07 Loan Modification: (1) increased the loan amount by

28 $916,628.00, to a total of $6,820,628.00 (Section 1(a)); (2) extended the Sales Start Date from

COMPLAINT

**EXHIBIT 1**

1    May 1, 2006, to July 30, 2007 (Section 1(e)); (3) extended the Unit Closings date from August 1,

2    2006, to September 30, 2007 (Section 1(f)); and (4)increased the total minimum Release Prices of

3    the units from $7,084,799.50 to $7,502,988.00 (Section 1(g)).

4        19.     Also in response to Amidy's requests for additional financing and a two-year

5    extension of the maturity date of the Note as referred to hereinabove, INDY MAC BANK, F.S.B

6    IndyMac extended the original maturity date of the Note from March 29, 2007, to March 28,

7    2008. In addition, on numerous occasions beginning in or about November 2006 and continuing

8    through October 2008 (including, without limitation, four in-person meetings at the construction

9    site), Barrone, Arnett, and other apparently authorized INDY MAC BANK, F.S.B employees

10    and/or representatives told Amidy that IndyMac would extend the maturity date of the Note an

11    additional year, if at the end of the first extended period Amidy requested an additional year, and

12    that IndyMac would continue to make disbursements pursuant to the Loan Agreement and

13    reimburse Cross-complainants for their expenses related to the Project, so that the Project could

14    be completed, the Units could be sold, and the Note could be repaid.

15        20.     On numerous occasions beginning in or about December 2007, Amidy told

16    Barrone, Arnett, and other authorized INDY MAC BANK, F.S.B employees and/or

17    representatives that, due to the construction delays referred to hereinabove, it would be necessary

18    to extend the maturity date of the Note from March 2008 to March 2009, as first requested by

19    Amidy beginning in or about November 2006.

20        21.     In response to Amidy's having told IndyMac that, for the reasons set forth

21    hereinabove it would be necessary to extend the maturity date of the Note from March 2008 to

22    March 2009, as first requested by Amidy beginning in or about November 2006, Barrone, Arnett,

23    and other apparently authorized INDY MAC BANK, F.S.B employees and/or representatives

24    informed Amidy that, before IndyMac would consider a modification to the Loan Agreement or

25    Note as requested, the parties would have to enter into a Preworkout Agreement "clarifying the

26    nature of the [workout] discussions" and the terms and conditions upon which such discussions

27    would proceed. On or about March 5, 2008, INDY MAC BANK, F.S.B presented Plaintiffs with

28    a Preworkout Agreement, which was signed by Plaintiffs on or about March 30, 2008 ("the 3/5/08

COMPLAINT

**EXHIBIT 1**

1  Preworkout Agreement"), as a result of INDY MAC BANK, F.S.B's statement that it would not

2  consider a modification to the Loan Agreement or Note if Plaintiffs did not sign it, despite INDY

3  MAC BANK, F.S.B 's prior repeated assurances to Amidy that INDY MAC BANK, F.S.B would

4  extend the maturity date of the Note to March 2009 if Amidy so requested, as hereinabove

5  alleged.

6      22.    After Plaintiffs and INDY MAC BANK, F.S.B entered into the 2/14/07 Loan

7  Modification, INDY MAC BANK, F.S.B breached the agreement by failing to make loan

8  distributions of $1, 462,147.10 as agreed and by failing to extend the maturity date of the Note

9  to March, 2009 as promised. The failure of INDY MAC BANK, F.S.B to make the agreed loan

10  distributions prevented Plaintiffs from completing the Project.

11      23.    On or about July 10. 2008, INDY MAC BANK, F.S.B was closed by the Office of

12  Thrift Supervision, and Defendant FDIC was appointed as receiver ("Receiver") for INDY MAC

13  BANK, F.S.B. Plaintiffs are informed and believe, and thereon allege, that, on the same date, a

14  new institution, IndyMac Federal Bank, FSB ("IndyMac Federal") was chartered, and all of the

15  insured deposits and substantially all of the assets and liabilities of INDY MAC BANK, F.S.B

16  including the claims and cross-claims involved in this litigation, were transferred to IndyMac

17  Federal, which was then placed into conservatorship, with Defendant FDIC appointed as

18  conservator ("Conservator").

19      24.    On November 12, 2008, Defendant FDIC filed suit against Plaintiffs seeking a

20  Judicial Foreclosure of the Deed of Trust secured by the Project and damages in the Superior

21  Court of California, Santa Clara County, Action Number 108CV127419. Plaintiff answered said

22  lawsuit asserting affirmative defenses of breach of contract, promissory fraud, breach of Implied

23  Covenant of Good Faith and Fair Dealing and cross-complained against FDIC for damages based

24  on the same facts and legal theories. Thereafter the matter was set for trial on May 24, 2010.

25      25.    On or about March 10, 2010, Plaintiffs were informed by counsel for Defendant

26  FDIC that Defendant FDIC had sold and assigned the assets and liabilities that were the subject

27  of the Santa Clara County Superior Court Action Number 108CV127419 to Defendant INDY

28  MAC

COMPLAINT

**EXHIBIT 1**

26.     On or about May 1, 2010 Defendants FDIC and INDY MAC entered into a settlement agreement with Plaintiffs wherein the parties would execute a mutual dismissal Complaint and Cross-complaint in the Santa Clara County Superior Court Action without prejudice and an agreement tolling all claims related to the pending lawsuit until December 31, 2011. Plaintiff were informed in writing by counsel for Defendants that during the tolling period no action would be taken against Plaintiffs and that the parties would enter into negotiations for a workout plan for the Project in which Plaintiffs would find either a buyer or refinancing for the project.

27.     Thereafter on May 5, 2010, Defendants and Plaintiffs executed a mutual dismissal of the Santa Clara County Superior Court Action and the Tolling Agreement. Said agreements were filed with the Superior Court of Santa Clara County on May 6, 2010.

28.     On May 13, 2010, despite the written representations of counsel for Defendants, Defendant INDY MAC recorded a Notice of Default in the obligation owed by Plaintiffs under Loan Agreement and proceeded with a non-judicial foreclosure on the Deed of Trust. Thereafter using the threat of non-judicial foreclosure, Defendants failed to engage in good faith negotiations with Plaintiffs to establish a workout plan.

## FIRST CAUSE OF ACTION

### (Breach of Settlement Agreement)

29.     Plaintiffs hereby incorporate by reference as though fully set forth herein each and every allegation set forth in Paragraphs 1 – 28 above.

30.     Plaintiffs are informed and believe and thereon allege that Defendant INDY MAC has set January 21, 2011 as the date for the trustee's sale of the Project. The trustee's sale of the the Project is in breach of the settlement agreement and the representations of Defendant's counsel that if Plaintiff's dismissed their cross-complaint and signed a tolling agreement, that Defendant INDY MAC would not take any actions against plaintiffs or the Project until December 31, 2011. Any sale of the Project under the Deed of Trust by the trustee is therefore void and may be set aside.

WHEREFORE, Plaintiffs pray for judgment as more fully set forth below

COMPLAINT

**EXHIBIT 1**

## SECOND CAUSE OF ACTION

### (Promissory Fraud)

31.     Plaintiffs hereby incorporate by reference as though fully set forth herein each and every allegation set forth in Paragraphs 1 – 28 above

32.     INDY MAC BANK, F.S.B 's assurances to Amidy that IndyMac would extend the maturity date of the Note through March 2009 and that it would continue to make disbursements so that the Project could be completed, the Units sold, and the Note could be repaid, were important to the continued development of the Project, and to Eden Garden's continued business relationship with INDY MAC BANK, F.S.B in connection with the Project.

33.     On each occasion that INDY MAC BANK, F.S.B promised Amidy it would extend the maturity date of the Note through March 2009, and that it would continue to make disbursements so that the Project could be completed, the Units sold, and the Note could be repaid, it did not intend to perform this promise.

34.     On each occasion that INDY MAC BANK, F.S.B Mac promised Amidy it would extend the maturity date of the Note through March 2009, and that it would continue to make disbursements so that the Project could be completed, the Units sold, and the Note could be repaid, it intended that Plaintiffs would rely on this promise.

35.     Because INDY MAC BANK, F.S.B promises were made repeatedly through apparently senior officers Barrone and Arnett with apparent authority to make the statements they made, Cross-complainants justifiably relied on INDY MAC BANK, F.S.B s promises to extend the maturity date of the Note through March 2009, and that it would continue to make disbursements so that the Project could be completed, the Units sold, and the Note could be repaid by, among other things, continuing in the business relationship with IndyMac, entering into the 2/14/07 Loan Modification, and paying an additional loan fee in the amount of $66,540.00, an appraisal fee in the amount of $6,500.00, a Loan Documentation fee in the amount of $300.00, and a Title Modification Endorsement and Recording fees in the estimated amount of $609.00, as well as an additional appraisal fee in 2008 in the amount of $4,500, together with IndyMac legal fees which INDY MAC BANK, F.S.B insisted be paid by Plaintiffs.

COMPLAINT

**EXHIBIT 1**

## SECOND CAUSE OF ACTION

(Promissory Fraud)

31.     Plaintiffs hereby incorporate by reference as though fully set forth herein each and every allegation set forth in Paragraphs 1 – 28 above

32.     INDY MAC BANK, F.S.B 's assurances to Amidy that IndyMac would extend the maturity date of the Note through March 2009 and that it would continue to make disbursements so that the Project could be completed, the Units sold, and the Note could be repaid, were important to the continued development of the Project, and to Eden Garden's continued business relationship with INDY MAC BANK, F.S.B in connection with the Project.

33.     On each occasion that INDY MAC BANK, F.S.B promised Amidy it would extend the maturity date of the Note through March 2009, and that it would continue to make disbursements so that the Project could be completed, the Units sold, and the Note could be repaid, it did not intend to perform this promise.

34.     On each occasion that INDY MAC BANK, F.S.B Mac promised Amidy it would extend the maturity date of the Note through March 2009, and that it would continue to make disbursements so that the Project could be completed, the Units sold, and the Note could be repaid, it intended that Plaintiffs would rely on this promise.

35.     Because INDY MAC BANK, F.S.B promises were made repeatedly through apparently senior officers Barrone and Arnett with apparent authority to make the statements they made, Cross-complainants justifiably relied on INDY MAC BANK, F.S.B s promises to extend the maturity date of the Note through March 2009, and that it would continue to make disbursements so that the Project could be completed, the Units sold, and the Note could be repaid by, among other things, continuing in the business relationship with IndyMac, entering into the 2/14/07 Loan Modification, and paying an additional loan fee in the amount of $66,540.00, an appraisal fee in the amount of $6,500.00, a Loan Documentation fee in the amount of $300.00, and a Title Modification Endorsement and Recording fees in the estimated amount of $609.00, as well as an additional appraisal fee in 2008 in the amount of $4,500, together with IndyMac legal fees which INDY MAC BANK, F.S.B insisted be paid by Plaintiffs.

COMPLAINT

**EXHIBIT 1**

36.     In addition, and also in justifiable reliance upon INDY MAC BANK, F.S.B repeated promises to extend the maturity date of the Note through March 2009, and that it would continue to make disbursements so that the Project could be completed, the Units sold, and the Note could be repaid, Plainitffs were induced to, and did, continue in their business relationship with INDY MAC BANK, F.S.B  continued to invest their own money (in the approximate amount of $900,000) into the Project, and refrained from seeking and obtaining alternative solutions to saving Plaintiffs' significant investment in the Project and saving the Project from collapse, including without limitation selling the Project, obtaining another lender, obtaining a joint venture partner, syndicating the Project, or otherwise taking action to bring in additional capital so that the Project could be completed, the Units sold, and the Note repaid.

37.     INDY MAC BANK, F.S.B  has not performed its promises to extend the maturity date of the Note through March 2009, and to continue to make disbursements so that the Project could be completed, the Units sold, and the Note could be repaid, as IndyMac promised it would, and instead declared the Note to be in default, failed to make any disbursements to Eden Garden since March 2008 thereby making it impossible for Eden Garden to complete the Project, sell the Units, and pay off the Note, .

38.     As a direct and proximate result of INDY MAC BANK, F.S.B 's failure to perform its promises to extend the maturity date of the Note beyond March 2008 and its failure to make disbursements to Eden Garden since March 2008, it has been impossible for Eden Garden to complete the Project and to sell the Units as originally planned, as a result of which Cross-complainants have suffered damages in excess of the jurisdictional minimum of this court, including without limitation the loss of Eden Garden's original investment in the Project as well as substantial additional funds (approximately $900,000) provided by Eden Garden in an attempt to keep the Project from failing, substantial increases in the cost of completing the Project resulting from the loss of the Project's original contractors, and the additional sums paid to IndyMac by way of loan, appraisal, title, legal, and other related fees and expenses demanded by IndyMac in connection with the 2/14/07 Loan Modification and the 3/5/08 Preworkout Agreement.

COMPLAINT

**EXHIBIT 1**

39.     As a further direct and proximate result of INDY MAC BANK, F.S.B's failure to perform its promises to extend the maturity date of the Note beyond March 2008 and its failure to make disbursements to Eden Garden since March 2008, Eden Garden will lose the profits that should have resulted from the sale of the Units, after more than three years of time, effort, and financial investment by Plaintiffs, in a sum in excess of the jurisdictional minimum of this Court.

40.     Plaintiffs' reliance upon the repeated promises of INDY MAC BANK, F.S.B to extend the maturity date of the Note to March 2009 and to make disbursements to Eden Garden to complete the Project was a substantial factor in causing the damages to Plaintiffs as hereinabove alleged.

41.     Pursuant to the express provisions of the Loan Agreement, the Note, the Deed of Trust, the Amidy Guaranty, and the Centra Net Guaranty, Plaintiffs are entitled to recover reasonable attorneys' fees incurred herein.

WHEREFORE, Plaintiffs pray for judgment as more fully set forth below.

### THIRD CAUSE OF ACTION

#### (Negligent Misrepresentation)

42.     Plaintiffs hereby incorporate by reference as though fully set forth herein each and every allegation set forth in Paragraphs 1 – 41, above.

43.     When INDY MAC BANK, F.S.B promised that it would extend the maturity date of the Note beyond March 2008 and that it would continue to make disbursements pursuant to the Loan Agreement so that the Project could be completed, it had no reasonable grounds for believing that it would honor these promises.

WHEREFORE, Plaintiffs pray for judgment as more fully set forth below.

### FOURTH CAUSE OF ACTION

#### (Fraud in the Inducement – Loan Agreement, Note, Trust Deed, Amidy Guaranty, and Centra Net Guaranty)

44.     Plaintiffs hereby incorporate by reference as though fully set forth herein each and every allegation set forth in Paragraphs 1 – 35, above.

COMPLAINT

**EXHIBIT 1**

45.     Before entering into the Loan Agreement, the Note, the Trust Deed, the Amidy Guaranty, and the Centra Net Guaranty, IndyMac assured Plaintiffs that, if the maturity date of the Note needed to be extended in order to complete the Project, INDY MAC BANK, F.S.B would do so, and INDY MAC BANK, F.S.B would continue to make disbursements so that the Project could be completed, the Units sold, and the Note repaid.

46.     INDY MAC BANK, F.S.B assurances to Plaintiffs that, if the maturity date of the Note needed to be extended in order to complete the Project, INDY MAC BANK, F.S.B would do so, and INDY MAC BANK, F.S.B would continue to make disbursements so that the Project could be completed, the Units sold, and the Note repaid, were important in Plaintiffs' decision to enter into the Loan Agreement, the Note, the Trust Deed, the Amidy Guarantee, and the Centra Net Guaranty, and in Plaintiffs' decision to proceed with the development of the Project with IndyMac.

47.     At the time INDY MAC BANK, F.S.B assured Plaintiffs that, if the maturity date of the Note needed to be extended in order to complete the Project, IndyMac would do so, and IndyMac would continue to make disbursements so that the Project could be completed, the Units sold, and the Note repaid, INDY MAC BANK, F.S.B knew that such assurances were false.

48.     At the time INDY MAC BANK, F.S.B assured Plaintiffs that, if the maturity date of the Note needed to be extended in order to complete the Project, IndyMac would do so, and IndyMac would continue to make disbursements so that the Project could be completed, the Units sold, and the Note repaid, IndyMac intended that Plaintiffs would rely on such assurances.

49.     Because INDY MAC BANK, F.S.B 's promises were made repeatedly through apparently senior officers Barrone and Arnett with apparent authority to make the statements they made, Plaintiffs justifiably relied upon INDY MAC BANK, F.S.B 's assurances that, if the maturity date of the Note needed to be extended in order to complete the Project, IndyMac would do so, and IndyMac would continue to make disbursements so that the Project could be completed, the Units sold, and the Note repaid, by entering into the Loan Agreement, the Note, the Trust Deed, the Amidy Guaranty, and the Centra Net Guaranty, by developing the Project with INDY MAC BANK, F.S.B serving as construction lender, and by paying to INDY MAC

COMPLAINT

**EXHIBIT 1**

1    BANK, F.S.B substantial sums, in excess of the jurisdictional minimum of this Court, by way of

2    loan fees, interest, and related costs and expenses.

3        50.    But for INDY MAC BANK, F.S.B 's assurances as hereinabove alleged, Plainitffs

4    would not have entered into these agreements, and would not have developed the Project with

5    INDY MAC BANK, F.S.B serving as construction lender.

6        51.    INDY MAC BANK, F.S.B failed to honor its assurances that that, if the maturity

7    date of the Note needed to be extended in order to complete the Project, INDY MAC BANK,

8    F.S.B would do so, and that INDY MAC BANK, F.S.B would continue to make disbursements

9    so that the Project could be completed, the Units sold, and the Note repaid, and instead declared

10   the Note to be in default, failed to make any disbursements to Eden Garden since March 2008

11   thereby making it impossible for Eden Garden to complete the Project, sell the Units, and pay off

12   the Note.

13       52.    As a direct and proximate result of INDY MAC BANK, F.S.B' s failure to honor

14   its assurances that that, if the maturity date of the Note needed to be extended in order to

15   complete the Project, INDY MAC BANK, F.S.B would do so, and that INDY MAC BANK,

16   F.S.B would continue to make disbursements so that the Project could be completed, the Units

17   sold, and the Note repaid, and of INDY MAC BANK, F.S.B 's failure to make disbursements to

18   Eden Garden since March 2008, it has been impossible for Eden Garden to complete the Project

19   and to sell the Units as originally planned, as a result of which Plaintiffs have suffered damages in

20   excess of the jurisdictional minimum of this Court, including without limitation the loss of Eden

21   Garden's original investment in the Project as well as substantial additional funds (approximately

22   $900,000) provided by Eden Garden in an attempt to keep the Project from failing, substantial

23   increases in the cost of completing the Project resulting from the loss of the Project's original

24   contractors, and the additional sums paid to INDY MAC BANK, F.S.B by way of loan,

25   appraisal, title, legal, and other related fees and expenses demanded by IndyMac in connection

26   with the 2/14/07 Loan Modification and the 3/5/08 Preworkout Agreement.

27       53.    As a further direct and proximate result of INDY MAC BANK, F.S.B to honor its

28   assurances that that, if the maturity date of the Note needed to be extended in order to complete

COMPLAINT

**EXHIBIT 1**

1   the Project, INDY MAC BANK, F.S.B would do so, and that INDY MAC BANK, F.S.B would

2   continue to make disbursements so that the Project could be completed, the Units sold, and the

3   Note repaid, and of INDY MAC BANK, F.S.B 's failure to make disbursements to Eden Garden

4   since March 2008, Eden Garden will lose the profits that should have resulted from the sale of the

5   Units, after more than three years of time, effort, and financial investment by Plaintiffs, in a sum

6   in excess of the jurisdictional minimum of this Court.

7        54.     As a further direct and proximate result of INDY MAC BANK, F.S.B failure to

8   honor its assurances that that, if the maturity date of the Note needed to be extended in order to

9   complete the Project, INDY MAC BANK, F.S.B would do so, and that INDY MAC BANK,

10  F.S.B would continue to make disbursements so that the Project could be completed, the Units

11  sold, and the Note repaid, and of INDY MAC BANK, F.S.B 's failure to make disbursements to

12  Eden Garden since March 2008, it has become impossible for Eden Garden to repay the Note and

13  IndyMac has sued Guiti, Amidy, and Centra Net on their respective Guaranties, to the damage of

14  Guiti, Amidy, and Centra Net in an amount in excess of the jurisdictional minimum of this Court.

15       55.     Plaintiffs' reliance upon INDY MAC BANK, F.S.B 's assurances that that, if the

16  maturity date of the Note needed to be extended in order to complete the Project, INDY MAC

17  BANK, F.S.B would do so, and that INDY MAC BANK, F.S.B would continue to make

18  disbursements so that the Project could be completed, the Units sold, and the Note repaid, was a

19  substantial factor in causing the damages to Plaintiffs as hereinabove alleged.

20       56.     Pursuant to the express provisions of the Loan Agreement, the Note, the Deed of

21  Trust, the Amidy Guaranty, and the Centra Net Guaranty, Plaintiffs are entitled to recover

22  reasonable attorneys' fees incurred herein.

23       WHEREFORE, Plaintiffs pray for judgment as more fully set forth below.

24       1)      For an Order vacating any trustee's sale of the Project

25       2)      For general and special damages in an amount to be determined at trial;

26       3)      For pre- and post-judgment interest at the legal rate;

27       4)      For attorneys' fees incurred herein;

28       5)      For costs of suit incurred herein; and

COMPLAINT

**EXHIBIT 1**

1      6)     For such other and further relief as the Court may deem just and proper.

2

3    Dated:  Jan 19, 2011

4

5                                        W. KENNETH HOWARD, Attorney for
                                         Plaintiffs
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

EXHIBIT 1

- *Paper Filers:* Parties who choose to file by paper must file an original and four copies of each filing.

Filings can be sent by hand or messenger delivery, by commercial overnight courier, or by first-class or overnight U.S. Postal Service mail (although the Commission continues to experience delays in receiving U.S. Postal Service mail). All filings must be addressed to: Marlene H. Dortch, Office of the Secretary, Federal Communications Commission, 445 12th Street, SW., Washington, DC 20554. Parties must also serve one copy with the Commission's copy contractor, Best Copy and Printing, Inc. (BCPI), Portals II, 445 12th Street, SW., Room CY–B402, Washington, DC 20554, (202) 488–5300, or via e-mail to *fcc@bcpiweb.com.*

- The Commission's contractor will receive hand-delivered or messenger-delivered paper filings for the Commission's Secretary at 236 Massachusetts Avenue, NE., Suite 110, Washington, DC 20002. The filing hours at this location are 8 a.m. to 7 p.m. All hand deliveries must be held together with rubber bands or fasteners. Any envelopes must be disposed of before entering the building.

- Commercial overnight mail (other than U.S. Postal Service Express Mail and Priority Mail) must be sent to 9300 East Hampton Drive, Capitol Heights, MD 20743.

- U.S. Postal Service first-class, Express, and Priority mail should be addressed to 445 12th Street, SW., Washington, DC 20554.

- *People with Disabilities:* To request materials in accessible formats for people with disabilities (Braille, large print, electronic files, audio format), send an e-mail to *fcc504@fcc.gov* or call the Consumer & Governmental Affairs Bureau at 202–418–0530 (voice), 202–418–0432 (tty).

Documents submitted in PS Docket No. 07–114, including each petition, will be accessible via the Commission's ECFS (at: *http://www.fcc.gov/cgb/ecfs*) by listing 07–114 in the "Proceeding" search field. These documents also will be available for public inspection and copying during business hours at the FCC Reference Information Center, Portals II, 445 12th St., SW., Room CY A257, Washington, DC 20554. The documents may also be purchased from BCPI, telephone (202) 488–5300, facsimile (202) 488–5563, TTY (202) 488–5562, e-mail *fcc@bcpiweb.com.* Document DA 09–2397 can also be downloaded in Word or Portable Document Format (PDF) at: *http://www.publicsafety.fcc.gov/pshs/releases/index.htm.*

These matters shall be treated as "permit-but-disclose" proceedings in accordance with the Commission's ex parte rules. Persons making oral ex parte presentations are reminded that memoranda summarizing such presentations must contain summaries of the substance of the presentations and not merely a listing of the subjects discussed. More than a one- or two-sentence description of the views and arguments presented generally is required. Other requirements pertaining to oral and written presentations are set forth in section 1.1206(b) of the Commission's rules.

This document contains proposed new information collection requirements. The Commission, as part of its continuing effort to reduce paperwork burdens, invites the general public and the Office of Management and Budget (OMB) to comment on the information collection requirements contained in this document as required by the Paperwork Reduction Act of 1995, Public Law 104–13. In addition, the Commission notes that pursuant to the Small Business Paperwork Relief Act of 2002, Public Law 107–198, see 44 U.S.C. 3506(c)(4), we previously sought specific comment on how the Commission might "further reduce the information collection burden for small business concerns with fewer than 25 employees."

For further information regarding this proceeding, contact David Siehl, Public Safety and Homeland Security Bureau, (202) 418–1313, *david.siehl@fcc.gov.*

Federal Communications Commission.

**Thomas J. Beers,**

*Division Chief, Policy, Public Safety and Homeland Security Bureau.*

[FR Doc. E9–27666 Filed 11–17–09; 8:45 am]

**BILLING CODE 6712–01–P**

---

## FEDERAL DEPOSIT INSURANCE CORPORATION

### Determination of Insufficient Assets To Satisfy Claims Against Financial Institution in Receivership

**AGENCY:** Federal Deposit Insurance Corporation (FDIC).

**ACTION:** Notice.

**SUMMARY:** The FDIC, by its Board of Directors, has determined that insufficient assets exist in the receivership of IndyMac Bank, F.S.B., Pasadena, California and the receivership of IndyMac Federal Bank, FSB, Pasadena, California to make any distribution to general unsecured claims, and therefore such claims will recover nothing and have no value.

**DATES:** The Board made its determination on November 12, 2009.

**FOR FURTHER INFORMATION CONTACT:** If you have questions regarding this notice, contact Thomas P. Bolt, Counsel, Legal Division, (703) 562–2046 or *tbolt@fdic.gov;* Shane Kiernan, Senior Attorney, Legal Division, 703) 562–2632 or *skiernan@fdic.gov,* FDIC, 3501 N. Fairfax Drive, Arlington, VA 22226

**SUPPLEMENTARY INFORMATION:** On July 11, 2008, IndyMac Bank, F.S.B., Pasadena, California ("IndyMac Bank") (FIN # 10007) was closed by the Office of Thrift Supervision and the Federal Deposit Insurance Corporation ("FDIC") was appointed as its receiver. In complying with its statutory duty to resolve the institution in the method that is least costly to the deposit insurance fund (see 12 U.S.C. 1823(c)(4)), the FDIC effected a pass-through receivership. Accordingly, the FDIC organized IndyMac Federal Bank, FSB, Pasadena, California ("IndyMac Federal"), a new federal savings bank for which the FDIC was appointed as conservator. IndyMac Bank's assets were transferred to IndyMac Federal under an agreement whereby the amount (if any) realized from the final resolution of IndyMac Federal after payment in full of IndyMac Federal's obligations was to be paid to the IndyMac Bank receivership. On March 19, 2009, IndyMac Federal was placed in receivership and substantially all of its assets were sold. The amount realized from the resolution of IndyMac Federal is insufficient to pay all of its liabilities, and therefore there will be no amount to pay to the IndyMac Bank receivership.

Section 11(d)(11)(A) of the FDI Act, 12 U.S.C. 1821(d)(11)(A), sets forth the order of priority for distribution of amounts realized from the liquidation or other resolution of an insured depository institution to pay claims. Under the statutory order of priority, administrative expenses and deposit liabilities must be paid in full before any distribution may be made to general unsecured creditors or any lower priority claims. The FDIC has determined that the assets of IndyMac Bank are insufficient to make any distribution on general unsecured claims and therefore, such claims, asserted or unasserted, will recover nothing and have no value. The FDIC has also determined that the assets of IndyMac Federal are insufficient to make any distribution on general unsecured claims and therefore, such claims, asserted or unasserted, will recover nothing and have no value.

**EXHIBIT 2**

Dated at Washington, DC, this 12th day of November, 2009.

By Order of the FDIC Board of Directors.

Federal Deposit Insurance Corporation.

**Valerie J. Best,**

*Assistant Executive Secretary.*

[FR Doc. E9–27593 Filed 11–17–09; 8:45 am]

**BILLING CODE 6714–01–P**

---

## FEDERAL ELECTION COMMISSION

### Sunshine Act Notices

**AGENCY:** Federal Election Commission.

**DATE AND TIME:** Tuesday, November 17, 2009, at 10 a.m.

**PLACE:** 999 E Street, NW., Washington, DC.

**STATUS:** This meeting will be closed to the public.

**ITEMS TO BE DISCUSSED:**

Compliance matters pursuant to 2 U.S.C. 437g.

Audits conducted pursuant to 2 U.S.C. 437g, 438(b), and Title 26, U.S.C.

Matters concerning participation in civil actions or proceedings or arbitration.

Internal personnel rules and procedures or matters affecting a particular employee.

**PERSON TO CONTACT FOR INFORMATION:** Judith Ingram, Press Officer, Telephone: (202) 694–1220.

**Mary W. Dove,**

*Secretary of the Commission.*

[FR Doc. E9–27549 Filed 11–17–09; 8:45 am]

**BILLING CODE 6715–01–M**

---

## FEDERAL RESERVE SYSTEM

### Sunshine Act Meeting

**AGENCY HOLDING THE MEETING:** Board of Governors of the Federal Reserve System.

**TIME AND DATE:** 11:30 a.m., Monday, November 23, 2009.

**PLACE:** Marriner S. Eccles Federal Reserve Board Building, 20th and C Streets, N.W., Washington, D.C. 20551.

**STATUS:** Closed.

**MATTERS TO BE CONSIDERED:**

1. Personnel actions (appointments, promotions, assignments, reassignments, and salary actions) involving individual Federal Reserve System employees.

2. Any items carried forward from a previously announced meeting.

**FOR FURTHER INFORMATION CONTACT:** Michelle Smith, Director, or Dave Skidmore, Assistant to the Board, Office of Board Members at 202–452–2955.

**SUPPLEMENTARY INFORMATION:** You may call 202–452–3206 beginning at approximately 5 p.m. two business days before the meeting for a recorded announcement of bank and bank holding company applications scheduled for the meeting; or you may contact the Board's Web site at *http:// www.federalreserve.gov* for an electronic announcement that not only lists applications, but also indicates procedural and other information about the meeting.

Board of Governors of the Federal Reserve System, November 13, 2009.

**Robert deV. Frierson,**

*Deputy Secretary of the Board.*

[FR Doc. E9–27695 Filed 11–16–09; 11:15 am]

**BILLING CODE 6210–01–S**

---

## FEDERAL MARITIME COMMISSION

### Notice of Agreement Filed

The Commission hereby gives notice of the filing of the following agreement under the Shipping Act of 1984. Interested parties may submit comments on the agreement to the Secretary, Federal Maritime Commission, Washington, DC 20573, within ten days of the date this notice appears in the **Federal Register**. Copies of the agreement are available through the Commission's Web site (*http:// www.fmc.gov*) or by contacting the Office of Agreements at (202)–523–5793 or *tradeanalysis@fmc.gov*.

*Agreement No.:* 011223–044.

*Title:* Transpacific Stabilization Agreement.

*Parties:* American President Lines, Ltd. and APL Co. PTE Ltd.; (operating as a single carrier); China Shipping Container Lines (Hong Kong) Company Limited and China Shipping Container Lines Company Limited (operating as a single carrier); CMA CGM, S.A.; COSCO Container Lines Company Ltd; Evergreen Line Joint Service Agreement; Hanjin Shipping Co., Ltd.; Hapag-Lloyd AG; Hyundai Merchant Marine Co., Ltd.; Kawasaki Kisen Kaisha Ltd.; Mediterranean Shipping Company; Nippon Yusen Kaisha; Orient Overseas Container Line Limited; Yangming Marine Transport Corp.; and Zim Integrated Shipping Services, Ltd.

*Filing Party:* David F. Smith, Esq.; Sher & Blackwell LLP; 1850 M Street, NW.; Suite 900; Washington, DC 20036.

*Synopsis:* The amendment adds A.P. Moller-Maersk A/S as a party to the agreement.

Dated: November 13, 2009.

By Order of the Federal Maritime Commission.

**Tanga S. FitzGibbon,**

*Assistant Secretary.*

[FR Doc. E9–27647 Filed 11–17–09; 8:45 am]

**BILLING CODE 6730–01–P**

---

## FEDERAL MARITIME COMMISSION

### Ocean Transportation Intermediary License Applicants

Notice is hereby given that the following applicants have filed with the Federal Maritime Commission an application for license as a Non-Vessel-Operating Common Carrier and Ocean Freight Forwarder—Ocean Transportation Intermediary pursuant to section 19 of the Shipping Act of 1984 as amended (46 U.S.C. Chapter 409 and 46 CFR 515).

Persons knowing of any reason why the following applicants should not receive a license are requested to contact the Office of Transportation Intermediaries, Federal Maritime Commission, Washington, DC 20573.

**Non-Vessel-Operating Common Carrier Ocean Transportation Intermediary Applicants**

Ship Beyond, Inc., 263 E. Redondo Beach Blvd., Gardena, CA 90245. Officer: Jimmy Lee, President (Qualifying Individual)

Seafair International Logistics, LLC, 910 W. Philips Street, #220, Ontario, CA 91762. Officers: Hengyi (Kelvin) Gu, Manager (Qualifying Individual), Tao Lu, Member

Daudry Business Group, Corp., dba Adam Logistics, 6713 NW 84th Ave., Miami, FL 33166. Officer: Darcy G. Perez, President (Qualifying Individual)

Inter-American Movers and Forwarders, LLC, 3032 N.W. 72nd Avenue, Miami, FL 33122. Officers: Terence A. Rignault, Director (Qualifying Individual), Alejandro Jerez, Managing Member

**Non-Vessel-Operating Common Carrier and Ocean Freight Forwarder Transportation Intermediary Applicants**

The Ultimate Freight Management & Logistics, Inc., 9215 Hall Road, Downey, CA 90241. Officers: Charles Chen, President (Qualifying Individual), Yi Li, CFO

Royalty Logistics, Inc., 6356 NW 99 Ave., Miami, FL 33178. Officers: Doumit Shmouni, President (Qualifying Individual), Diane Aboukhalil, Secretary

Prime Movers Inc., 242 South Coastal Highway 17, Midway, GA 31320.

**EXHIBIT 2**

DOCUMENT: 21054819

Pages: 2

| | |
|---|---|
| Fees .. | 18.00 |
| Taxes .. | |
| Copies . | |
| AMT PAID | 18.00 |

1  WHEN RECORDED MAIL TO

2  **W. KENNETH HOWARD  (SBN 12906**
   **Attorney at Law**
3  **116 East Campbell Ave. #7**
   **Campbell, CA 95008**
4  **408-379-1904**
   **Fax 408-379-1902**

REGINA ALCOMENDRAS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Attorney

RDE # 024
1/20/2011
10:34 AM

5

6

7                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8                       **IN AND FOR THE COUNTY OF SANTA CLARA**

9   EDEN GARDEN LLC, a California limited
    liability company; ALI K. AMIDY, an
10  individual; GUITI NAHAVANDI AMIDY,
    an individual; CENTRA NET
11  INVESTMENT LLC, a California limited
    liability company;
12
                        Plaintiffs,
13
          vs.
14
    INDY MAC VENTURE, LLC, a Limited
15  Liability Company, FEDERAL DEPOSIT
    INSURANCE CORPORATION, as
16  Conservator of IndyMac Federal Bank,
    FSB, and Does 1 through 10
17
                        Defendants
18

CASE NO.  111CV192197

**NOTICE OF PENDENCY OF ACTION**

19   NOTICE IS HEREBY GIVEN THAT Plaintiffs in the above entitled action have filed suit
20  against  INDY MAC VENTURE, LLC, a Limited Liability Company, FEDERAL DEPOSIT
    INSURANCE CORPORATION, as Conservator of IndyMac Federal Bank, FSB, and Does 1
21  through 10 in the Superior Court of California, County of Santa Clara Action No.111CV192197.
    Said action effects title to the real property the legal description of which is :

22  Lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18 and 19, as shown upon that certain map
    entitled "Tract No. 9484" and filed June 16, 2005 in Book 787 of Maps, at Page 42, in the County of Santa
23  Clara, State of California.
    APN's: 455-52-036 through 053
24

25

26  Dated   January 19, 2011

W. Kenneth Howard,
Attorney for Plaintiffs

27

28

COMPLAINT

**EXHIBIT  3**

## PROOF OF SERVICE BY CERTIFIED MAIL

     I am a citizen of the United States and a resident of the county of Santa Clara, State of California.  I am over the age of eighteen years and not a party to the within entitled action; my business address is: 116 East Campbell Avenue #7, Campbell, CA 95008.  On January 19, 2011, I served the <u>Notice of Pendency of Action</u> attached hereto by Certified Mail with return receipt requested on

    **INDY MAC VENTURES, LLL**
    c/o Sheppard, Mullin Richter & Hampton
      650 Town Center Drive, 4th Fl.
    Costa Mesa, CA 92626

    **FEDERAL DEPOSIT INSURANCE CORP.**
    c/o Stephen Kessler, Managing Counsel
     40 Pacifica
     Irvine CA 92618

    I declare, under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed at Campbell, California.

DATED: ___1/19/2011___         _____
                               Thomas B. Kidwell

**EXHIBIT 3**

1
## CERTIFICATE OF SERVICE

2      The undersigned hereby certifies that: I am over the age of eighteen (18) and

3 not a party to the within action. I am employed in the law firm of Allen Matkins

4 Leck Gamble Mallory & Natsis LLP, 1900 Main Street, Fifth Floor, Irvine,

5 California 92614-7321.

6      On June 22, 2011, I used the Northern District of California's Electronic Case

7 Filing System, with the ECF registered to Nicholas S. Shantar to file the following

8 document:

9      **DEFENDANT INDYMAC VENTURE LLC'S REQUEST FOR**

10     **JUDICIAL NOTICE IN SUPPORT OF MOTION TO EXPUNGE**

11     *LIS PENDENS*

12     The ECF system is designed to send an e-mail message to all parties in the

13 case, which constitutes service. The parties by e-mail in this case are found on the

14 Court's Electronic Mail Notice List.

15     Notice has been given via First Class U.S. Mail to:

16                     W. Kenneth Howard, Esq.
                       Attorney At Law
17                     116 East Campbell Avenue, Suite 7
                       Campbell, California 95008
18                     Phone: (408) 379-1904
                       Fax: (408) 379-1902
19
20
21     I declare under penalty of perjury under the laws of the United States of

22 America that the foregoing is true and correct.

23     Executed on June 22, 2011, at Irvine, California.

24
25          By:_____/s/Nicholas S. Shantar_____

26              NICHOLAS S. SHANTAR

27
28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

928681.01/OC

-3-

REQUEST FOR JUDICIAL NOTICE IN
SUPPORT OF MOTION TO EXPUNGE LIS
PENDENS